WALLWORK LEASE AND RENTAL CO., INC., Plaintiff and Appellant,

v.

Kathleen D. DECKER, a/k/a Kathy Decker, Defendant and Appellee.

Civ. No. 10382.

Supreme Court of North Dakota.

July 14, 1983.

---

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for plaintiff and appellant; argued by John Michael Nilles, Fargo.

Wegner, Fraase, Nordeng & Johnson, Fargo, for defendant and appellee; argued by Mark R. Fraase, Fargo.

PEDERSON, Justice.

This is an appeal by Wallwork Lease and Rental Co., Inc. (Wallwork) from a summary judgment entered by the district court of Cass County pursuant to Rule 56, NDRCivP. The action arises out of various business transactions entered into by Gary Decker, the president of Black's, Inc., a women's clothing store in Fargo, North Dakota. We reverse and remand.

In 1976 Black's sold equipment used in its stores to Wallwork Lease for $75,-000.00. Wallwork agreed to lease the equipment back to Black's for a five-year term. The lease called for monthly payments. Gary Decker and his wife, Kathy Decker, personally guaranteed the lease.[1]

Black's experienced financial difficulties and defaulted on the Wallwork lease in 1980. Approximately $21,302.00 in monthly payments were left due on the lease. Black's then petitioned for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. In April 1981 the bankruptcy court authorized Black's to reject the Wallwork lease. That has not been challenged in this action.

After Black's rejected the lease, Wallwork contacted Gary and expressed a desire to sell the leased equipment. Wallwork, Gary, and a potential purchaser, City Centre, Inc., began negotiations on the sale of the equipment. As a result of the negotiations, Wallwork's equipment, as well as Black's personal property, was sold to City Centre.

The proceeds of the sale, however, did not satisfy the entire amount due on the lease and approximately $15,302.00 was outstanding. To satisfy this deficiency, Wallwork and Gary agreed that Gary would pay Wallwork $5,000.00 immediately and would pay the balance in equal installments on November 1, 1981 and December 31, 1981. The parties also agreed that upon payment of the installments, "the parties will be mutually released from any and all liability to the other . . . ." Kathy Decker did not know of or participate in the discussions

---

1. Kathy did not read the guaranty before signing, however, as this court recently noted, "[f]ailure to read a document before signing does not excuse ignorance of its contents unless the party shows that 'he was prevented from reading it by fraud, artifice, or design . . .' (citation omitted)." *Pioneer Credit Co. v. Medalen,* 326 N.W.2d 717, 719 (N.D.1982).

that culminated in this agreement.[2] Accordingly, she did not sign the document.

When Gary failed to pay the installments as they became due, Wallwork contacted Kathy. Wallwork claimed that Kathy remained liable on the 1976 lease as a guarantor and was therefore liable for the installments that Gary agreed to pay under the new agreement.

Kathy moved for summary judgment contending that she was not liable as a guarantor because the 1976 lease was materially altered by the sale of the leased equipment and the subsequent agreement between Gary and Wallwork. The trial court concluded that these alterations of the original obligation underlying the guaranty exonerated Kathy of any liability on the guaranty pursuant to § 22–01–15, NDCC. The court further found that there was no genuine issue of material fact, and granted judgment in favor of Kathy. Wallwork agrees that there is no genuine issue of material fact but appeals from this judgment, contending that § 22–01–15 does not exonerate one who signs a broad, absolute guaranty such as Kathy signed. Wallwork asks for summary judgment in its favor.

The contract of a guarantor is a separate contract. *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640, 643 (N.D.1980). As a guarantor, one must answer for the consequences of the principal's default. *State Bank of Burleigh County v. Porter,* 167 N.W.2d 527, 533 (N.D.1969). See also § 22–01–01(1), NDCC. The guarantor is liable to the guarantee immediately upon default of the principal.[3] Section 22–01–10, NDCC. If, however, the creditor alters "in any respect" the original obligation of the principal without the consent of the guarantor, the guarantor is deemed "exonerated," § 22–01–15, NDCC, unless the guaran-

tor waived his right to object to any subsequent alteration. Wallwork claims that the guaranty signed by Kathy contains a waiver of her right to object to any subsequent alteration of the original underlying obligation.

The guaranty instrument provided that Kathy and Gary "guarantee . . . the prompt performance by . . . [Black's] of the terms and conditions of the Lease . . . ." The guaranty also provides that:

"The undersigned waive notice of acceptance of this Guaranty, notice of nonperformance. or nonpayment of any of the obligations of Lessee and notice of the amount of indebtedness outstanding at any time. <u>This Guaranty is an absolute and completed one and shall be a continuing one.</u> The liability of the undersigned shall not be affected by any renewal of the Lease, extension of time, the extension of credit or modification of the Lease terms. The liability of the undersigned as between themselves and owner shall be that of principal debtors and their liability hereunder shall not be affected by owner's failure to repossess the leased equipment upon default of Lessee or to pursue any of owner's other remedies against Lessee provided for in the Lease. This Guaranty shall be binding upon the undersigned jointly and severally and upon their heirs, successors and assigns and shall inure to the benefit of owner, its successors and assigns." [Emphasis added.]

The underscored language of the guaranty agreement affirms that this is an absolute guaranty,[4] and, accordingly, liability becomes fixed upon default of the debtor. *Bank of Kirkwood Plaza, supra,* 294 N.W.2d at 644. In addition, the guaranty explicitly provides that Kathy's liability "shall not be

---

**2.** Kathy and Gary were separated at the time of these negotiations and eventually were divorced.

**3.** Pursuant to Chapter 22–01, NDCC, Wallwork is the creditor, Black's is the principal debtor, and Gary and Kathy Decker are the guarantors. See *State Bank of Burleigh County, supra,* 167 N.W.2d at 531.

**4.** Some of the distinctions between a conditional and an absolute guaranty are discussed in 38 CJS Guaranty § 61, as well as in *State Bank of Burleigh County, supra,* 167 N.W.2d at 532. We note that Kathy did not claim that the language of the guaranty was ambiguous. See *Sorlie v. Ness,* 323 N.W.2d 841, 844 (N.D.1982).

affected by ... modification of the Lease terms." In effect, Kathy guaranteed all of Black's lease payments to Wallwork, regardless of subsequent modifications of the terms of the lease. By signing the guaranty, Kathy waived her right to object to subsequent alterations or modifications of the lease, and her right to claim exoneration under § 22–01–15, NDCC. Therefore, § 22–01–15, NDCC does not exonerate Kathy from her obligation to Wallwork. See *First Nat. Bank & Trust Co. of Bismarck v. Hart,* 267 N.W.2d 561, 565 (N.D.1978) (guarantor held liable on guaranty when guarantor agreed to unconditionally guarantee prompt payment of notes without notice of indebtedness due or of renewal or extension of notes, even though note sued upon was not the first in a series of notes).

Wallwork's separate agreement with Gary did not affect Kathy's liability as a guarantor. The guaranty, by its terms, extended to the original lease agreement and continued until performance of Black's was complete. Kathy remained liable on the guaranty when Black's failed to perform according to the terms of the lease.

Because we find that the court incorrectly applied § 22–01–15, NDCC, the applicable law on guaranties, summary judgment in Kathy's favor was inappropriate. Kathy points out, however, that this court has held that we will not reverse a proper judgment merely because the trial court relied upon an improper interpretation of law. See *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505, 509 (N.D.1980), and *Bohn v. Bohn Implement Co.,* 325 N.W.2d 281, 283 (N.D.1982). This court has also held that there is an increased chance of error when the court proceeds on a theory not fairly litigated. See *Center State Bank, Inc. v. State Bank. Bd.,* 276 N.W.2d 132, 134 (N.D.1979).

We accordingly reverse the judgment and remand to permit the trial court to consider if any provision of the Uniform Commercial Code (Title 41, NDCC) or the law of release and substitution of obligations or contracts (Ch. 9–13, NDCC), or any other law relieves Kathy of the obligation she incurred by signing the guaranty.

Reversed and remanded.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.