2005 ND 35

David W. BRANDT, John A. Brandt, and Roy Brandt, Plaintiffs, Appellants and Cross–Appellees

v.

Dean S. SOMERVILLE, Margaret D. Somerville, and Posilock Puller, Inc., Defendants, Appellees and Cross–Appellants.

No. 20040112.

Supreme Court of North Dakota.

Feb. 16, 2005.

Roger J. Minch, Serkland Law Firm, Fargo, N.D., for plaintiffs, appellants and cross-appellees.

Robert G. Hoy (argued) and Sean M. Fredricks (on brief), Ohnstad Twichell, P.C., West Fargo, N.D., for defendants, appellees and cross-appellants.

KAPSNER, Justice.

[¶ 1] David Brandt, John Brandt, and Roy Brandt appealed and Dean Somerville, Margaret Somerville, and Posilock Puller, Inc., cross-appealed from a judgment and post-judgment order in Brandts' shareholder action against Somervilles seeking damages for breaches of fiduciary duties and seeking an order requiring Somervilles to buy Brandts' shares of Posilock for fair market value. We hold the trial court's findings of fact about the Brandts' claims for breaches of fiduciary duties are not clearly erroneous, the court did not err in applying the book value provision of a stock transfer agreement to Somervilles' buyout of Brandts' shares of Posilock, and the court did not abuse its discretion in determining a remedy for Somervilles' misappropriation of Posilock's corporate opportunity. We affirm.

I

[¶ 2] In 1978, David Brandt and Dean Somerville incorporated Posilock as a closely-held corporation to manufacture and market a bearing puller developed and patented by Dean Somerville and David Brandt's deceased father, Paul Brandt. Contemporaneously with Posilock's incorporation, David Brandt and Dean Somerville executed a written stock transfer agreement that restricted the transfer of any Posilock stock by providing the other shareholders with an option to purchase the stock for book value. Posilock's stock certificates included language subjecting the certificates to the stock transfer agreement and stating the certificates were transferrable only in accordance with that agreement. David Brandt and Dean Som-

erville each received half of the Posilock stock, and David Brandt ultimately divided his Posilock stock with his brothers, John, Herman, and Roy Brandt.

[¶ 3] The Somerville and the Brandt families initially did most of the work to manufacture and sell the bearing pullers, and Posilock operated out of a building in McHenry, North Dakota. After a 1984 fire destroyed that building, Somervilles purchased property in Cooperstown, which they leased to Posilock to continue operations. Although the Brandts collectively retained half of Posilock's stock and David Brandt served as a director and secretary for Posilock, Brandts' involvement with the day-to-day operations of Posilock gradually diminished after the 1984 fire and move to Cooperstown. During the same period, Dean Somerville served as a director and president of Posilock, and he became more involved in running Posilock. Dean Somerville eventually started other family-owned businesses, including DMI and Dynamics 360, which share office space with Posilock in the Cooperstown facility. The Brandts do not have any ownership interest in DMI or Dynamics 360. DMI is a teleservices firm that was incorporated in 1992. Dynamics 360 was incorporated in 1992 and provides Posilock with some marketing and human resource services. Dynamics 360 consists of three divisions, a gift basket division, a sales division, and PL MFG.

[¶ 4] In 1998, Posilock's supplier of component parts for the bearing puller announced a large price increase for those parts, and Somervilles formed PL MFG as a division of Dynamics 360 to produce the component parts for the bearing puller. PL MFG also makes products for other manufacturers, but about half of its production consists of the parts for Posilock's bearing puller. The startup cost for PL MFG included a $450,000 loan to Posilock

from Sheyenne Valley Electric Cooperative under the Rural Electric Development Loan and Grant Program. The loan process required a Cooperstown bank to guarantee the loan, and the bank, in turn, required a personal guarantee by Dean and Margaret Somerville. The necessary loan documents were executed by Posilock, and Posilock endorsed a $450,000 check to Dynamics 360, which then deposited the check into Dynamics 360's account. In 2000, Posilock's accountant discovered the loan had been made to Posilock, not Dynamics 360, and recommended listing the loan as a liability for Posilock and as a receivable from Dynamics 360. PL MFG thereafter executed a formal promissory note to Posilock.

[¶ 5] In October 2000, Brandts sued Somervilles and Posilock, alleging Somervilles operated Posilock without regard to their duties and obligations to the corporation and to Brandts, and Somervilles breached numerous fiduciary duties to Brandts in violation of N.D.C.C. §§ 10–19.1–50, 10–19.1–51, and 10–19.1–60. Brandts alleged Somervilles failed to provide them with appropriate corporate records and disclosure of information about Posilock and its relationship with Somervilles' other family-owned corporations; paid excessive salaries to family members; used Posilock's resources and good standing to obtain the $450,000 loan for Dynamics 360; stopped making royalty payments to Brandts for a patent on the bearing puller and never paid them dividends for Posilock; took numerous steps to freeze out Brandts and render their shares of Posilock valueless; and misappropriated Posilock's business opportunities. Brandts sought an equitable remedy, including an accounting and a fair value buyout of their shares of Posilock, and other damages for Somervilles' breaches of their fiduciary duties and their duty of good faith. Somervilles denied breaching any fiduciary

duties to the Brandts and counterclaimed to buy Brandts' Posilock stock for book value under the terms of the stock transfer agreement.

[¶ 6] After a bench trial, the court found Somervilles did not act fraudulently or illegally toward Brandts. In language tracking N.D.C.C. § 10–19.1–115(1)(b)(3), the court found Somervilles' involvement with PL MFG was conducted in a manner "unfairly prejudicial" to Brandts and constituted a wrongful appropriation of Posilock's corporate opportunity to produce its own parts. The court determined the stock transfer agreement was binding on the parties, the terms of the agreement were not unreasonable, and Brandts' shares of Posilock stock were subject to a buyout for book value as calculated under a formula in the agreement. The court concluded Posilock's opportunity to manufacture its own parts was an available business opportunity for Posilock, and with the personal guarantee of Dean Somerville, Posilock had the financial ability to manufacture the parts. The court found Dean Somerville did not act in bad faith in expanding Dynamics 360 at the expense of Posilock. However, the court concluded, except as to the gift basket division of Dynamics 360, the activities of Dynamics 360 constituted a wrongful appropriation of Posilock's corporate opportunity, but the activities of DMI were not an appropriation of Posilock's corporate opportunity. In placing a value on Somervilles' wrongful appropriation of Posilock's corporate opportunity, the court applied the formula in the stock transfer agreement to Dynamics 360. The court ultimately ordered Somervilles to pay Brandts $930,344, plus interest, for Brandts' shares of Posilock stock and for the wrongful appropriation of Posilock's corporate opportunity.

II

[¶ 7] We analyze Brandts' claims within the framework of N.D.C.C. ch. 10–19.1,

the North Dakota Business Corporation Act. *See Lonesome Dove Petroleum, Inc. v. Nelson,* 2000 ND 104, ¶ 29, 611 N.W.2d 154 (applying N.D.C.C. ch. 10–19.1 to claims that majority shareholders and officers breached fiduciary duties to minority shareholder and holding there was no separate common law fiduciary duty). We have recognized that N.D.C.C. ch. 10–19.1 provides significant protection for minority shareholders in a close corporation. *Fisher v. Fisher,* 546 N.W.2d 354, 358 (N.D. 1996). In *Lonesome Dove,* at ¶ 30, we said N.D.C.C. ch. 10–19.1 "imposes a duty upon officers, directors, and those in control of a corporation to act in good faith, and affords remedies to minority shareholders if those in control act fraudulently, illegally, or in a manner unfairly prejudicial toward any shareholder." *See also Fisher v. Fisher,* 1997 ND 176, ¶ 20, 568 N.W.2d 728; *Grinaker v. Grinaker,* 553 N.W.2d 200, 202–03 (N.D.1996); *Fisher,* 546 N.W.2d at 358; *Schumacher v. Schumacher,* 469 N.W.2d 793, 797 (N.D.1991); *Balvik v. Sylvester,* 411 N.W.2d 383, 385–89 (N.D.1987).

[¶ 8] Sections 10–19.1–50, 10–19.1–51, and 10–19.1–60, N.D.C.C., generally outline standards of conduct for officers and directors of corporations. Sections 10–19.1–50 and 10–19.1–60, N.D.C.C., require officers and directors of a corporation to discharge their duties in good faith, in a manner reasonably believed to be in the best interest of the corporation, and with the care an ordinary prudent person in a like position would exercise under similar circumstances. Section 10–19.1–51, N.D.C.C., outlines standards for conflicts of interests in transactions between a corporation and its directors or their families. Shareholders have a broad right of access to corporate documents under N.D.C.C. §§ 10–19.1–84 and 10–19.1–85, *see Nodak Mut. Ins. Co. v. Ward County Farm Bu-*

*reau,* 2004 ND 60, ¶ 27, 676 N.W.2d 752, and those in control of a corporation may not freeze out minority shareholders, or fail to provide them with adequate information about the corporation. *See Grinaker,* 553 N.W.2d at 202–03; *Balvik,* 411 N.W.2d at 385–89.

[¶ 9] Under N.D.C.C. § 10–19.1–85.1, in an action brought by a shareholder, a court may grant equitable relief it considers just and reasonable under the circumstances, if a corporation, or officer or director of the corporation violates N.D.C.C. ch. 10–19.1. Under N.D.C.C. § 10–19.1–115(1)(b), in an action by a shareholder, a court may dissolve a corporation or grant any equitable relief it deems just and reasonable under certain specified conditions, including when the directors or those in control have acted fraudulently or illegally to the shareholders, or in a manner unfairly prejudicial to the shareholders. In deciding whether to order equitable relief or dissolution, a court shall consider the corporation's financial condition, but may not refuse to grant equitable relief or dissolution solely because the corporation has accumulated or current operating profits. N.D.C.C. § 10–19.1–115(2). In granting equitable relief or dissolution, the court shall take into consideration shareholders' duties to one another to act in an honest, fair, and reasonable manner in the operation of the corporation and the reasonable expectations of the shareholders. N.D.C.C. § 10–19.1–115(4). In *Balvik,* 411 N.W.2d at 388–89, under a prior statute identifying dissolution as the only remedy for oppressive conduct by those in control of a corporation, we concluded a trial court abused its discretion in ordering the extreme and unduly harsh remedy of dissolution. We cited several alternative remedies and concluded the appropriate remedy in that case was ordering one of the shareholders to buy the other shareholder's stock for fair value. *Id.* at 388–89.

[¶ 10] Section 10–19.1–115(3), N.D.C.C., specifically authorizes the court to order the sale of shares of a closely-held corporation if one of the conditions in N.D.C.C. § 10–19.1–115(1)(b) is met and the court determines, in its discretion, the order would be fair and equitable under the circumstances. The purchase price of any shares of stock that the court orders sold must be the fair value of the shares, unless the shares are subject to a shareholder control agreement, in which case the court shall order the sale for the price set forth in that agreement unless the court determines that price is unreasonable under all the circumstances. N.D.C.C. § 10–19.1–115(3)(a). Any buy-sell agreement between the shareholders is presumed to reflect the parties' reasonable expectations about the matters in the agreement. N.D.C.C. § 10–19.1–115(4).

A

[¶ 11] Brandts claim Somervilles breached numerous fiduciary duties of good faith and loyalty to Brandts, and the trial court erred in failing to address their claims for breach of those fiduciary duties and for actual fraud. Brandts assert the trial court failed to adequately address the $450,000 loan. Brandts claim two of Somervilles' family-owned corporations, Dynamics 360 and DMI, appropriated Posilock's corporate opportunities. They argue Dynamics 360, through its PL MFG division, misappropriated Posilock's corporate opportunity to manufacture parts for the bearing puller and DMI misappropriated Posilock's corporate opportunity for marketing products. Brandts claim they should have been awarded damages for both misappropriations, or the court should have granted them equitable relief for Somervilles' actions.

[¶ 12] A trial court's findings about claims for breaches of fiduciary duties under N.D.C.C. ch. 10–19.1 are governed by the clearly erroneous rule of N.D.R.Civ.P. 52(a). *See Lonesome Dove,* 2000 ND 104, ¶ 34, 611 N.W.2d 154. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the trial court made a mistake. *Hogan v. Hogan,* 2003 ND 105, ¶ 6, 665 N.W.2d 672. A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the trial court. *Id.* On appeal, we do not reweigh conflicts in the evidence, *see Center Mut. Ins. Co. v. Thompson,* 2000 ND 192, ¶ 20, 618 N.W.2d 505, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses. N.D.R.Civ.P. 52(a). A trial court's findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the trial court's decision. *In re Griffey,* 2002 ND 160, ¶ 8, 652 N.W.2d 351.

[¶ 13] The trial court explicitly found Somervilles did not act fraudulently, illegally, or in bad faith towards Brandts. *See* N.D.C.C. § 10–19.1–115(1)(b)(2). However, the court found some of Somervilles' actions regarding Posilock's corporate opportunity were conducted in a manner that was "unfairly prejudicial" toward Brandts under N.D.C.C. § 10–19.1–115(1)(b)(3). The trial court's findings indicate Somervilles' conduct regarding the $450,000 loan formed a significant part of the court's decision that Somervilles' conduct was "unfairly prejudicial" toward Brandts. The court analyzed those claims as a misappropriation of Posilock's corporate opportunity, and the court effectively found a breach of Somervilles' fiduciary duties for the misappropriation of Posi-

lock's corporate opportunity. *See Jundt v. Jurassic Res. Dev.*, 2003 ND 9, ¶ 25, 656 N.W.2d 15 (stating fiduciary obligation imposed upon corporate officers and directors precludes them from appropriating business opportunity that belongs to corporation). The court decided the marketing business engaged in by DMI did not constitute an appropriation of Posilock's corporate opportunity. The court's findings effectively explain Somervilles did not breach fiduciary duties to Brandts except for the misappropriation of Posilock's corporate opportunity, and the court awarded damages for that claim under the formula in the stock transfer agreement.

■■■ [¶ 14] We conclude the trial court's findings on fiduciary duties and fraud are stated with sufficient specificity to understand the basis for its decision and those findings address Brandts' fiduciary claims within the context of N.D.C.C. ch. 10–19.1. We do not condone conduct by those in control of a close corporation which constitutes a freeze out of shareholders, or a failure to provide appropriate corporate information to those not in control of the corporation. David Brandt testified that before Brandts commenced this action, they had been provided with monthly financial statements from Posilock. There was evidence that after Brandts commenced this action, they were provided information about Posilock as required by the corporate bylaws. David Brandt further testified that Dean Somerville never refused to provide him information when he asked, and he often did not ask Dean Somerville about what was going on with Posilock. According to Dean Somerville, he provided the Brandts with opportunities to make decisions about Posilock, and they declined. There was also evidence David Brandt was the spokesperson for, and represented, his family's interest in corporate meetings with Dean Somerville, which were often informally conducted as meetings between David Brandt and Dean Somerville. Although those in control of a close corporation have an obligation to provide disclosure to those not in control of the corporation, *see* N.D.C.C. §§ 10–19.1–84 and 10–19.1–85, Brandts' claims in this case involve allegations that were addressed by the trial court under the rubric of illegal or fraudulent actions, or conduct that was unfairly prejudicial to shareholders. We decline Brandts invitation to reweigh or conduct a de novo review of the evidence and the trial court's findings on Brandts' claims. We are not persuaded the trial court's findings on the claims for breach of fiduciary duty and fraud were induced by an erroneous view of the law, and we are not left with a definite and firm conviction the trial court made a mistake in its findings on those claims. We therefore conclude the court's findings on those issues are not clearly erroneous.

B

■ [¶ 15] Brandts argue the trial court erred in concluding the stock transfer agreement was binding and in calculating the value of their Posilock stock at book value under that agreement instead of at fair value under N.D.C.C. § 10–19.1–115(3). They argue the court should have disregarded the stock transfer agreement because it was not a valid contract, or because the price in the agreement, book value, was unreasonable under N.D.C.C. § 10–19.1–115(3)(a). Brandts claim the stock transfer agreement was not an enforceable contract, because a condition precedent for the agreement was "suitable by-laws [being] adopted and kept in force by the corporation to make this agreement effective" and Posilock's bylaws made no reference to the agreement.

[¶ 16] We agree with the trial court's conclusion that the requirement for bylaws stated in the stock transfer agreement was satisfied by the adoption of Posilock's bylaws. Nothing in the plain language of the stock transfer agreement requires that the bylaws refer to the agreement, and the bylaws are not inconsistent with the agreement. We therefore reject Brandts' argument that the stock transfer agreement was invalid because of a failure of a condition precedent.

[¶ 17] Under N.D.C.C. § 10–19.1–70, a restriction on the transfer of a corporation's stock may be imposed by an agreement among the shareholders, and a conspicuous written restriction on the face of a stock certificate, which is not manifestly unreasonable, may be enforced against the certificate holder. In a shareholder action, N.D.C.C. § 10–19.1–115(3)(a) authorizes a court to order the sale of shares of a close corporation for fair value. However, if the shares are subject to a shareholder control agreement, the court shall order the sale under the terms of the agreement unless the court determines the price or terms are unreasonable under all the circumstances of the case. *Id.*

[¶ 18] In *Sorlie v. Ness*, 323 N.W.2d 841, 842 (N.D.1982), we considered the interpretation of a "Stock Transfer Agreement With Option" that provided for the sale of stock at the "established book value." The parties stipulated the book value of the stock was $322.75 per share, but contemporaneous sales of the stock ranged from $1800 to almost $2000 per share. *Id.* at 843–44. Although the case involved issues about the interpretation of other provisions of the agreement, we said " 'stockholders' agreements restricting sale of corporate stock . . . will be construed so as to give the widest range of choice permissible *under the language used in the agreement.*' " *Id.* at 844 (quoting *Kutch-*

*era v. Kutchera*, 189 N.W.2d 680, 685 (N.D.1971)). We said courts may not rewrite a shareholders' agreement under the guise of relieving one of the parties from the apparent hardship of an improvident agreement, and we recognized the general proposition that, in close corporations, a majority of courts have sustained restrictions that are determined to be reasonable in light of the relevant circumstances. *Sorlie*, at 844–45.

[¶ 19] Here, David Brandt testified he recommended using an attorney who had initially done work for the Brandt family to prepare Posilock's documents of incorporation, which included the stock transfer agreement. David Brandt testified he was aware the agreement placed some restrictions on the transfer of Posilock stock, and there was some discussion about the reason for the agreement. Any claim by David Brandt that he may not have read or fully understood the agreement does not excuse ignorance of the terms of the agreement. *See Wallwork Lease and Rental Co., Inc. v. Decker*, 336 N.W.2d 356, 357 n. 1 (N.D.1983). The trial court found the stock transfer agreement was conspicuously noted on Posilock's stock certificates and enforcement of the book value provision in the agreement would not be unreasonable. *See* N.D.C.C. §§ 10–19.1–70 and 10–19.1–115(3). The agreement is presumed to reflect the parties' reasonable expectations. N.D.C.C. § 10–19.1–115(4). Although Brandts' claim that the agreement is unreasonable in light of Somervilles' conduct, we have concluded the trial court did not clearly err in its findings about Brandts' claims for fraud and bad faith, and we further conclude the court did not err in calculating the value of Brandts' shares of Posilock stock at book value under the terms of the agreement.

[¶ 20] The Brandts' reliance on *Pedro v. Pedro*, 489 N.W.2d 798 (Minn.Ct.App. 1992) and *Matter of Villa Maria, Inc.*, 312 N.W.2d 921 (Minn.1981) is misplaced. In *Villa Maria*, at 921–23, the Minnesota Supreme Court affirmed a trial court decision granting the involuntary dissolution of a close corporation, or in the alternative, a buyout of a shareholder's fifty per cent interest in the corporation at market value. In considering whether the trial court erred in ordering the buyout at market value rather than at book value as provided in a restrictive shareholder agreement, the court recognized the shareholder conduct in that case justified granting involuntary dissolution of the corporation. *Id.* at 923. The court therefore concluded the shareholder's rights were not controlled by the agreement, but were governed by statutory provisions authorizing dissolution and liquidation of assets. *Id.* Here, the Brandts did not specifically seek dissolution of Posilock, and the trial court did not order that remedy.

[¶ 21] In *Pedro*, 489 N.W.2d at 800–02, the Minnesota Court of Appeals affirmed a trial court decision that awarded a minority shareholder $766,582.33 for his one-third interest of a close corporation under the terms of a stock retirement agreement, and an additional $563,417.67 as damages for breaches of fiduciary duties, which represented the difference between the fair market value of the shareholder's stock and the value provided in the stock retirement agreement. In *Pedro*, at 801–02, the court allowed recovery under the terms of the stock retirement agreement and also awarded the minority shareholder additional damages for breaches of fiduciary duties by the majority shareholders, which included hiring a private investigator to follow the minority shareholder, fabricating accusations of neglect and malfeasance, falsely informing employees the minority shareholder had a nervous breakdown, and threatening termination of employment if the minority shareholder did not forget about financial irregularities. Here, the trial court's findings about Somervilles' conduct are not as egregious as the conduct in *Pedro*, and the court allowed recovery under the terms of the stock transfer agreement and awarded additional damages for the misappropriation of Posilock's corporate opportunity.

[¶ 22] The Brandts nevertheless claim the trial court's award of damages was insufficient, because Somervilles' misconduct required the court to award them a fair value buyout under N.D.C.C. § 10–19.1–115(3) for Posilock, Dynamics 360, and DMI.

[¶ 23] Chapter 10–19.1, N.D.C.C. grants courts broad equitable powers to remedy breaches of duties by corporate officers and shareholders. N.D.C.C. §§ 10–19.1–85.1, and 10–19.1–115. *See Grinaker*, 553 N.W.2d at 202–03. *See also Balvik*, 411 N.W.2d at 388–89. Our decisions recognize that a trial court has discretion to fashion remedies for violations of N.D.C.C. ch. 10–19.1, and we review a trial court's determination about remedies under the abuse-of-discretion standard. *Grinaker*, at 203; *Balvik*, at 389. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law. *Gonzalez v. Tounjian*, 2003 ND 121, ¶ 37, 665 N.W.2d 705.

[¶ 24] The trial court found that other than the gift basket division, the activities of Dynamics 360 were so integrated into the activities of Posilock that even the employees of PL MFG referred to it as Posilock Manufacturing; Dynamics 360 constituted a wrongful appropriation

of a Posilock corporate opportunity, except as to the gift basket division of Dynamics 360; the business engaged in by DMI was not due to an appropriation of a Posilock corporate opportunity; and in awarding damages for Somervilles' appropriation of Posilock's corporate opportunity, it was appropriate to apply the formula in the stock transfer agreement to Dynamics 360 because if PL MFG had been set up under the corporate business of Posilock, it would be part of Posilock and would be subject to the stock transfer agreement.

[¶ 25] We conclude the trial court's findings about the other Somerville businesses are not clearly erroneous, and the court's remedy for the misappropriation of Posilock's business opportunity was the product of a rational mental process and was not arbitrary, unreasonable, or unconscionable, or a misapplication of the law. We therefore conclude the court did not abuse its discretion in determining the remedy for Somervilles' conduct.

## IV

[¶ 26] Brandts claim the court should have allowed them to amend their complaint to seek punitive damages because they clearly showed oppression, fraud, or actual malice by Somervilles.

[¶ 27] A motion to amend a complaint lies within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Murphy v. Murphy*, 1999 ND 118, ¶ 33, 595 N.W.2d 571. In denying Brandts' pretrial motion to amend their complaint, the court explained the defendants alleged actions did not rise to the level of oppressive or malicious conduct. After the Brandts rested their case at trial, the court denied their renewed motion to amend their complaint to include punitive damages, concluding there had not been a sufficient showing of conduct that would warrant exemplary damages. Moreover, the court ultimately found Somervilles did not act fraudulently, illegally, or in bad faith towards Brandts. We have concluded those findings are not clearly erroneous, and we further conclude the court's denial of Brandts' motions to amend their complaint to seek punitive damages was the product of a rational mental process and was not arbitrary, unreasonable, or unconscionable, or a misapplication of the law. We therefore conclude the trial court did not abuse its discretion in denying Brandts' motions to amend their complaint.

## V

[¶ 28] Brandts claim the trial court should have allowed them discovery about DMI and should have compelled Dean Somerville to produce his financial statement at trial.

[¶ 29] Discovery decisions are subject to review under the abuse-of-discretion standard. *Smith v. Smith*, 538 N.W.2d 222, 230 (N.D.1995). The court denied Brandts' request for discovery about DMI, concluding the request lacked specificity and was overly broad. The court ultimately ruled the business engaged in by DMI was not a misappropriation of Posilock's corporate opportunity. We conclude the court did not abuse its discretion in ruling on Brandts' discovery request for information about DMI.

[¶ 30] During trial, the court sustained Somervilles' relevancy objection to Brandts' request for Dean Somerville to produce his financial statement at trial. A trial court is given broad discretion to determine relevancy of evidence. *Wolf v. Estate of Seright*, 1997 ND 240, ¶ 14, 573 N.W.2d 161. We conclude the trial court did not abuse its discretion in ruling on Brandts' request for Dean Somerville's financial statement.

## VI

[¶ 31] Brandts claim the trial court erred in altering its award of interest on the judgment. The judgment initially awarded Brandts interest at 7 per cent, as provided under the stock transfer agreement. In a post-judgment order, the court allowed Somervilles to deposit the money awarded to Brandts with the clerk of court under N.D.C.C. § 10–19.1–115(3)(d) and N.D.R.Civ.P. 67. Under N.D.C.C. § 10–19.1–115(3)(d), the purchase price for stock must be paid in one or more installments as agreed upon by the parties, or, if no agreement can be reached, as ordered by the court. If the court orders the sale of shares of a corporation and an adequate bond is posted so the court is satisfied that the full purchase price, plus any additional costs, expenses, and fees, will be paid, the selling shareholders no longer have any rights or status as shareholders, except the right to receive the money for their shares plus any other amounts awarded; N.D.C.C. § 10–19.1–115(3)(d). This case involved an effective buyout of Brandts' stock by Somervilles, and under these circumstances, we conclude the court did not err in allowing Somervilles to deposit the money awarded to Brandts, plus the interest accrued to that point, with the clerk of court.

## VII

### A

[¶ 32] In their cross-appeal, Somervilles assert the trial court erred as a matter of law in concluding they wrongfully appropriated Posilock's corporate opportunity. Somervilles argue there was no corporate opportunity that Posilock had the financial ability to pursue. They claim, as a matter of law, Posilock did not have the financial ability to pursue the opportunity to manufacture parts for the bearing puller and would have had to rely on the personal guarantee of Dean Somerville to pursue that opportunity.

[¶ 33] In *Jundt*, 2003 ND 9, ¶¶ 25–26, 656 N.W.2d 15, we discussed the misappropriation of a corporate opportunity:

"[T]he fiduciary obligation of undivided loyalty imposed upon directors and officers precludes them from appropriating a business opportunity which belongs to the corporation." Joseph W. Bishop, Jr., *The Law of Corporate Officers and Directors* § 3.05 (2002). "The law has long recognized the doctrine of corporate opportunity which prohibits one who occupies a fiduciary relationship to a corporation from acquiring, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." 3 *Fletcher Cyc. Corps.* § 861.10 (2002 Rev. Perm. Ed.).

. . . .

"What constitutes the usurpation of a corporate 'opportunity' is the subject of considerable litigation. . . . [H]owever, a single definitive test has not yet emerged." Joseph W. Bishop, Jr., *The Law of Corporate Officers and Directors* § 3.05 (2002).

Four tests have been established as standards for identifying a corporate opportunity: the "line of business" test, the "interest or expectancy" test, the "fairness" test, and the "ALI" test. Under any test, a corporate opportunity exists when a proposed activity is reasonably incident to the corporation's present or prospective business and is one in which the corporation has the capacity to engage. Whether or not a given opportunity meets the requisite relationship is largely a question of fact to be determined from the objective facts and surrounding circumstances existing at

the time the opportunity arises. Whether or not an officer has misappropriated a corporate opportunity does not depend on any single factor. 3 *Fletcher Cyc. Corps.* § 861.10 (2002 Rev. Perm. Ed.). "[A] director is not required to use his or her own money or credit to finance the business of the company." *Id.* at § 862.10.

[¶ 34] In *Jundt*, 2003 ND 9, ¶ 27, 656 N.W.2d 15, it was not necessary to adopt any of the four tests for determining if there has been a misappropriation of a corporate opportunity, because we concluded, under any of the four prevailing tests, the claimant case had failed to meet his burden. We concluded because of the percentage of corporate ownership, the defendants, the majority owners of the corporation, had the power to control the corporation's business decisions, and they impliedly disclosed to themselves and the corporation all of the relevant facts about the corporation's asserted opportunity to purchase property and elected to forego that opportunity. *Id.* We also said the corporation's debts exceeded the appraised value of its assets, and the claimant made no showing the corporation had the financial ability to take the opportunity without additional investment of money or credit by the owners. *Id.* We said whether proposed activity meets the requisite relationship to the corporation's business is largely a fact question, and we concluded, as a matter of law, the claimant had made no showing that the corporation had the financial ability to pursue the opportunity. *Id.*

[¶ 35] Here, the trial court concluded Posilock had a corporate opportunity to manufacture its own parts, which was reasonably incident to its present or prospective business, and it had the capacity to engage in that opportunity. As in *Jundt*, 2003 ND 9, ¶ 27, 656 N.W.2d 15, it

is not necessary to adopt any one of the four prevailing tests for misappropriation of a corporate opportunity, because the court's findings satisfy each of those tests. The court also found Posilock, with the personal guarantee of Dean Somerville, had the financial ability to expend necessary capital to manufacture its own parts as demonstrated by the fact that Posilock obtained the $450,000 loan, the proceeds of which were transferred to Dynamics 360. In *Jundt*, at ¶ 27, the corporation's debts exceeded the appraised value of its assets. Here, there was evidence Posilock was substantially debt free and was profitable and had been experiencing growth. There was also evidence Posilock was a financially stable company and had sufficient accounts receivable and cash reserves to pursue this corporate opportunity. According to Dean Somerville, Posilock was a very successful business. According to Tamara Tibor, Dean Somerville's daughter and part owner of Dynamics 360, Posilock could have grown and expanded to pursue new opportunities just like Dynamics 360 expanded. We are not persuaded the Somervilles' personal guarantee of the loan to Posilock controls its ability to engage in this opportunity, because there is evidence Posilock was financially able to pursue the opportunity. We reject Somervilles' request to essentially reweigh the evidence, and we conclude the court did not clearly err in finding Somervilles misappropriated Posilock's corporate opportunity to manufacture its own parts.

B

[¶ 36] Somervilles alternately argue the court erred in computing the amount to be added back to Posilock to determine the monetary award to Brandts for the misappropriation of Posilock's corporate opportunity. They argue the court erred in combining all of Dynamics 360

into Posilock, because the record supports combining only the PL MFG division of Dynamics 360.

[¶ 37] The trial court found the activities of Dynamics 360 were closely integrated with Posilock. There was evidence Dynamics 360 also provided Posilock with services for marketing and human resources, which could have been done by Posilock. The court has discretion in determining the appropriate remedy under N.D.C.C. ch. 10–19.1. We conclude the court did not clearly err in finding Dynamics 360 was closely integrated with Posilock, and the court did not abuse its discretion in determining a remedy for Somervilles' misappropriation of Posilock's business opportunity.

VIII

[¶ 38] We affirm the judgment and the post-judgment order.

[¶ 39] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.