2011 ND 70

**Rodney THOMPSON and Karen Thompson, individually and derivatively on behalf of ARRK Investments, Inc. d/b/a Ultimate Rent All, Plaintiffs and Appellees**

v.

**Ronald E. SCHMITZ, ARRK Investments, Inc., and R.E.S. Investments, Inc. d/b/a Ultimate Transportation, Defendants and Appellants**

and

**David T. Nameniuk, CPA, Defendant.**

No. 20100248.

Supreme Court of North Dakota.

March 28, 2011.

Michael D. Nelson, West Fargo, ND, for plaintiffs and appellees.

Brad A. Sinclair, Horace, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Ronald E. Schmitz, ARRK Investments, Inc. ("ARRK"), and RES Investments, Inc. ("RES"), doing business as Ultimate Transportation, appealed from third and fourth amended judgments

awarding Rodney Thompson and Karen Thompson, individually and on behalf of ARRK, half of the value of ARRK's corporate assets plus pre-judgment interest, attorney's fees, expenses, and costs, including expert witness fees and interest, in their shareholder derivative action. We affirm.

## I.

[¶ 2] We previously set forth relevant facts in our prior decision in this case, *Thompson v. Schmitz*, 2009 ND 183, 774 N.W.2d 263 (*"Thompson I"*), and we will not repeat them except as necessary to resolve the issues raised in this appeal.

[¶ 3] In May 2005, Rodney and Karen Thompson, individually and derivatively on behalf of ARRK, brought an action against Schmitz and RES. They alleged conversion, breach of numerous fiduciary duties, misappropriation of corporate funds, fraud, and misappropriation of corporate opportunities.

[¶ 4] The district court granted partial summary judgment dismissing the Thompsons' claim that they had loaned Schmitz $150,000 to become part owners of ARRK and he had failed to repay them. After trial, the district court ruled the Thompsons and Schmitz entered into an "implied in fact contract for the purchase by Thompsons of one-half of the future stream of income of trailer rentals owned by Schmitz and [RES]." *Thompson I*, at ¶ 12. The district court also ruled that Schmitz converted one-half of the future stream of income from trailer rentals. The district court valued one-half of the future stream of income at $150,000 and determined it was not a corporate asset of ARRK. The district court alternatively ruled that even if an implied-in-fact contract did not exist, Schmitz was unjustly enriched.

[¶ 5] The district court determined Schmitz breached the fiduciary duties he owed to ARRK under the North Dakota Business Corporation Act ("NDBCA"), ch. 10–19.1. As a result, the district court found Schmitz liable for attorney's fees related to amending ARRK's tax returns. The district court also awarded the Thompsons attorney's fees stemming from Schmitz's misrepresentation regarding his contribution to ARRK. Ultimately, because the Thompsons did not "plead as specifically as they [should] have," the district court amended the pleadings to conform to the evidence before the court.

[¶ 6] Schmitz appealed the district court's second amended judgment. We held the district court abused its discretion when it amended the pleadings to include a claim for an implied-in-fact contract. *Thompson I*, at ¶ 20. We also held the district court erred in treating the Thompsons' and Schmitz's contributions as non-corporate assets. *Id.* at ¶ 24. We did not address attorney's fees, costs, disbursements, or pre-judgment interest. We reversed and remanded to the district court to try the case as a shareholder derivative action under the NDBCA, giving the district court the discretion to "open the record to take additional evidence if deemed necessary." *Id.* at ¶ 24. We instructed the district court to prepare findings addressing the issues raised by the parties' pleadings. *Id.*

[¶ 7] On remand, after hearing argument from both parties and recognizing the significant amount of evidence already in the record, the district court did not open the record to take additional evidence. Both parties filed post-remand briefs. The district court entered its amended findings of fact and conclusions of law. It retained several of the district court's original findings and added new findings concerning ARRK's corporate as-

sets and Schmitz's breaches of various fiduciary duties. The district court concluded Schmitz and RES converted both his $300,000 stream-of-income contribution to ARRK and the Thompsons' $150,000 capital contribution. The Thompsons were awarded half of the value of those contributions, as assets of ARRK, plus pre-judgment interest.

[¶ 8] The parties submitted briefs and the district court held a hearing to consider attorney's fees, costs, expenses, and disbursements. The court awarded the Thompsons $511,066.16 in attorney's fees and nontaxable expenses, and $80,648.16 in costs and disbursements, including fees and interest on the Thompsons' expert witness fees.

[¶ 9] Schmitz, ARRK, and RES appealed the district court's judgments, challenging the district court's determination concerning the corporate assets of ARRK and its award of pre-judgment interest. Schmitz also challenges the district court's award of attorney's fees, costs, expenses, and expert witness fees and interest.

## II.

[¶ 10] Schmitz argues the district court erred by determining a stream of income for ARRK existed. Specifically, he argues our decision in *Thompson I* precludes the existence of a stream of income. This issue is governed by the law-of-the-case doctrine, which is

> the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same. The mandate rule, a more specific application of law of the case, requires the trial court to follow pronouncements of an

appellate court on legal issues in subsequent proceedings of the case and to carry the [appellate court's] mandate into effect according to its terms. Under the law of the case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms.

*State v. Burckhard,* 1999 ND 64, ¶ 7, 592 N.W.2d 523 (internal citations omitted). Therefore, because the facts of this case remain the same as in *Thompson I,* the primary question is whether the district court complied by our directives in *Thompson I.*

[¶ 11] With regard to Schmitz's stream-of-income challenge in *Thompson I,* we held: "Schmitz clearly intended the use of RES's trailers, equipment, and employees to be a contribution to ARRK. Although Schmitz's contribution is an intangible asset, intangible assets can have value, and the evidence suggests the use of the trailers, equipment, and employees was of substantial value to ARRK." *Thompson I,* at ¶ 23 (citations omitted). Moreover, we held: "[T]he value of the use of RES's trailers, equipment, and employees not less than the $100,000 represented by Schmitz in the corporate records, should be treated as assets available to ARRK in the dissolution proceedings." *Id.*

[¶ 12] On remand, the district court treated Schmitz's contribution to ARRK— the use of RES's trailers, equipment, and employees—as a corporate contribution. Specifically, the district court found:

> 13. The most significant item available to the new venture was the "stream of income" that would be produced from trailer rentals.
>
> . . . .

17. . . . The parties intended that the stream of income from trailer rentals which Schmitz contributed to ARRK would continue into the indefinite future, as well as the use of R.E.S. employees and equipment associated in conducting those rentals . . . .

18. . . . On August 15, 2005, Schmitz simply usurped the trailer rentals for himself through his business at R.E.S. Investments . . . . As of August 15, 2005, Schmitz and R.E.S. converted the "stream of income" owned by ARRK, and for approximately 4½ years since that date Schmitz and R.E.S. have diverted to R.E.S. all income from the rental of trailers.

. . . .

20. From the testimony and the conduct of the parties, the agreement of the parties was to be for the contribution by Schmitz to ARRK of the stream of income from R.E.S. trailer rentals in the future, which was already an established part of Schmitz's business . . . .

21. The start-up contributions to ARRK by Schmitz (stream of trailer rental income) and Thompson ($150,000 in cash) occurred on August 1, 2001 . . . .

. . . .

28. The most compelling evidence is that Schmitz contributed the entire "stream of income" from trailer rentals to ARRK, at start-up.

29. Revenues from rental trailers increased from August 2001 through April 2005. The present value of this "stream of income," an intangible asset, was $300,000 as of August 15, 2005, which is the same value Schmitz assigned to this "stream of income" when he contributed it to ARRK at the start-up of ARRK.

[¶ 13] Our decision in *Thompson I* required the district court, on remand, to treat Schmitz's corporate contribution— the "use of RES's trailers, equipment, and employees"—as a corporate asset "available to ARRK in the dissolution proceedings." *Thompson I*, at ¶ 23. The district court abided by our mandate and, in numerous findings, treated Schmitz's corporate contribution as an asset available to ARRK in the proceeding. The district court equated Schmitz's contribution of the use of RES's trailers, equipment, and employees with the stream of income from the use of those trailers, equipment, and employees. That is, Schmitz's corporate contribution was a stream of income stemming from the use of RES's trailers, equipment, and employees. The district court correctly included this contribution as a corporate asset of ARRK.

[¶ 14] Schmitz contends credible evidence did not support the district court's valuation of Schmitz's contribution—the stream of income from the use of RES's trailers, equipment, and employees—at $300,000. This issue is limited by the law-of-the-case doctrine. Before the first appeal, the district court valued the stream of income at $300,000. The district court found: "The best evidence of the value of this future stream of income, is the value that the parties themselves placed on the future indefinite stream of income in 2001 which is $150,000 for a one-half share." When asked how Schmitz came up with the $150,000 buy-in value at trial, he stated: "I believe I had mentioned to them it was just for the lost revenues that I was going to incur that I would automatically receive without having [the Thompsons] as a partner."

[¶ 15] In *Thompson I*, we stated: "[T]he value of the use of RES's trailers, equipment, and employees *not less than the $100,000* represented by Schmitz in the corporate records, should be treated as assets available to ARRK in the dissolution proceedings." *Id.* at ¶ 23 (emphasis

added). On remand, the district court explained its conclusion that *Thompson I* did not upset its original valuation of the stream of income at $300,000:

> Judge Racek made a finding, not disturbed on appeal, "on the evidence presented, the value of one-half of the stream of income which was converted by defendant Schmitz and R.E.S. was $150,000." There is no need for further evidence in this regard.... The $300,000 was the value of the stream of income indefinitely into the future.

The district court retained the $300,000 value it originally placed on the stream of income. Our decision in *Thompson I* only required that the value stemming from the use of RES's trailers, equipment, and employees be not less than $100,000. The district court's findings and conclusions relevant to Schmitz's capital contribution, as well as the value of that contribution, conform with our decision in *Thompson I*.

### III.

■ [¶ 16] Schmitz argues the district court erred in treating the $150,000 payment by the Thompsons as a corporate asset. Specifically, he contends the law-of-the-case doctrine precluded this Court from holding the Thompsons' $150,000 payment as a corporate asset, even though that is precisely what we ruled in *Thompson I*, because "neither party raised the issue on appeal" in *Thompson I*. Schmitz refuses to accept our mandate in *Thompson I*; rather, he is requesting this Court to overturn its holding in *Thompson I*. We rejected his position in *Thompson I*, and we rejected his position when we denied his petition for rehearing after *Thompson I*. Our decision in *Thompson I* instructed the district court to treat the $150,000 payment by the Thompsons as an "asset[ ] available to ARRK in the dissolution proceeding." *Id.* at ¶ 23. The district court clearly complied with our directive and

treated the Thompsons' $150,000 capital contribution as a corporate asset subject to dissolution.

### IV.

■ [¶ 17] Schmitz argues the district court abused its discretion in awarding the Thompsons $511,066.16 in attorney's fees and nontaxable expenses. He also argues the award of attorney's fees was not reasonable and was not appropriate in this case because his claims were not frivolous. Many of the cases relied on by Schmitz considered attorney's fees under N.D.C.C. ch. 28–26 ("Costs and Disbursements"). Reliance on those cases is misplaced, however, because this case is a shareholder derivative action under the NDBCA, N.D.C.C. ch. 10–19.1. The relevant attorney-fee provisions of that act provide:

> 10–19.1–85.1. *Equitable remedies for shareholders.* If a corporation or an officer or director of the corporation violates this chapter, a court in this state, in an action brought by a shareholder of the corporation, may grant equitable relief it considers just and reasonable in the circumstances and award expenses, *including attorney's fees* and disbursements, to the shareholders.
>
> . . . .
>
> 10–19.1–115(6). *Involuntary dissolution.* If the court finds that a party to a proceeding brought under this section has acted arbitrarily, vexatiously, or otherwise not in good faith, it may in its discretion award reasonable expenses, *including attorney's fees* and disbursements, to any of the other parties.

(Emphasis added.)

■ [¶ 18] This Court reviews an award of attorney's fees under the abuse-of-discretion standard. *Brandt v. Somerville*, 2005 ND 35, ¶ 23, 692 N.W.2d 144 (citing N.D.C.C. §§ 10–19.1–85.1 and 10–

19.1–115). "A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Id.* North Dakota Rule of Professional Conduct 1.5(a) provides guidance as to the reasonableness of the award. *Heng v. Rotech Medical Corporation,* 2006 ND 176, ¶ 30, 720 N.W.2d 54. Further, the "lodestar" amount—the number of reasonably expended hours times a reasonable hourly rate—is presumed to be the reasonable fee. *Duchscherer v. W.W. Wallwork, Inc.,* 534 N.W.2d 13, 16–17 (N.D.1995).

[¶ 19] An award of attorney's fees is justified under § 10–19.1–85.1, N.D.C.C., because on remand, the district court found Schmitz violated many of his fiduciary duties under chapter 10–19.1. An award of attorney's fees is also justified under § 10–19.1–115(6) because, on remand, the district court found Schmitz acted arbitrarily, vexatiously, or otherwise not in good faith. *Cf. Kortum v. Johnson,* 2008 ND 154, ¶ 53, 755 N.W.2d 432 (remanding because the district court did not make sufficient findings to grant relief under N.D.C.C. § 10–19.1–115). Specifically, the district court found Schmitz "violated his duty of utmost loyalty and good faith," failed to "act in an honest, fair, and reasonable manner," "engaged in conduct that frustrated the reasonable expectations of the Thompsons," "violated his duty (obligation) to the Thompsons to not use corporate assets preferentially," "violated his duty of loyalty," diverted and misappropriated corporate funds, and, among others, "acted fraudulently or illegally."

[¶ 20] As to the reasonableness of the $511,066.16 award of attorney's fees and non-taxable expenses, the district court's lengthy findings regarding Schmitz's conduct as an officer, director, and controlling shareholder of ARRK indicate the court did not act arbitrarily or unreasonably. The district court's award of attorney's fees was limited—it disallowed fees for observation time billed by a law clerk and fees where two attorneys worked on a matter where one was sufficient. After briefing by the parties and a hearing, the district court considered the lodestar method as well as the factors provided by N.D.R. Prof. Conduct 1.5(a) by referencing the district court's award of attorney's fees in the original proceeding. While the record does not indicate the district court calculated a specific lodestar amount or compared the hours and rates charged by opposing counsel, the district court explained in its order awarding attorney's fees why a significant award was appropriate:

> The position taken by the Defendant in both the wind up of ARRK and the subsequent litigation went beyond being a bonafide [sic] dispute. In addition to the "misdirection" on Defendant Schmitz's contribution of $100,000 of hard assets to the corporation, positions taken by the Defendant were not well supported. . . . The Defendant reargues the evidence after it is clear that the Supreme Court has rejected those arguments.
>
> . . . .
>
> The Defendant has maintained that the use of assets contributed by the Defendant had value, generating $251,000 in the 4 years of operation and at the same time claiming that the Defendant can take back that asset after pocketing the Plaintiffs' $150,000 contribution and, presumably, continue to generate income for himself with those same assets. Defendant apparently saw nothing wrong or inequitable about this situation and litigated ferociously to hang onto all he had retained with the exception of

one-half the liquidation proceeds from the inventory purchased with the corporations [sic] cash flow.

Such was the tone of this litigation and, accordingly, the time and effort required to overcome such "novel" defenses was considerable and is a factor taken into account by the Court in determining the reasonableness of the Plaintiffs' fee request.

[¶ 21] Schmitz "'cannot litigate tenaciously and then be heard to complain about the time necessarily spent' overcoming its vigorous defense." *Duchscherer*, 534 N.W.2d at 19 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality)). Chapter 10–19.1, N.D.C.C., "grants courts broad equitable powers to remedy breaches of duties by corporate officers and shareholders." *Brandt v. Somerville*, 2005 ND 35, ¶ 23, 692 N.W.2d 144 (citing N.D.C.C. §§ 10–19.1–85.1 and 10–19.1–115). Acting under that broad power and discretion, the district court's award of attorney's fees and non-taxable expenses was a reasoned determination and the product of a rational mental process.

## V.

[¶ 22] Schmitz argues the district court abused its discretion in awarding unreasonable expert witness fees for a non-testifying expert. The Thompsons hired Wayne Bradley, a certified public accountant, who was assisted by Chad DeJong, also a certified public accountant. At the conclusion of the original proceeding, the district court awarded only Bradley's expert witness fee in the amount of $42,907.50. On remand, the district court also awarded a fee for DeJong's services in the amount of $16,237.50.

[¶ 23] In *City of Bismarck v. Thom*, this Court held that the "determination of which witnesses are experts and which witnesses are necessary at the trial, and the amount of fees, are matters appropriately left to the discretion of the trial court." *City of Bismarck v. Thom*, 261 N.W.2d 640, 647 (N.D.1977); *see also Patterson v. Hutchens*, 529 N.W.2d 561, 567 (N.D.1995) ("The allowance of an expert witness fee for a witness who did not testify at trial is within the discretion of the trial court."). While *Thom* was not tried under the NDBCA, it is consistent with the conclusion the district court retains the discretion to award expert witness fees, including fees for experts who do not testify, under N.D.C.C. §§ 10–19.1–85.1 and 10–19.1–115(6).

[¶ 24] Ultimately, in *Thom* we held the district court did not abuse its discretion in awarding expert witness fees to an expert who "did much of the pretrial investigation ... which would have been required by someone else, and probably at a higher per diem rate." *Id.* at 647. Here, DeJong assisted Bradley with pretrial matters; he ferreted out the accounting scheme developed by Schmitz and his accountant, David Nameniuk. Under the district court's broad power and discretion to fashion an appropriate remedy for violations of N.D.C.C. ch. 10–19.1, the district court did not abuse its discretion in awarding expert witness fees for the services of Dejong.

[¶ 25] Schmitz also argues, under a mitigation-of-damages theory, the district court abused its discretion "by allowing [the Thompsons] to have $21,227.79 of interest that has accrued on the unpaid bills" of Bradley and DeJong. Schmitz argues the Thompsons failed to pay the bills for their expert witnesses, and as a result, should not be awarded interest. The district court found, however, Schmitz breached many of his fiduciary duties to ARRK and the Thompsons. It also explained why taxation of interest charged

on the Thompsons' outstanding expert witness fees was appropriate: "Like any other professional business, expert witnesses are entitled to be paid interest on billed but unpaid fees and expenses, and the agreement between Bradley Business Advisors LLC and Plaintiffs' counsel's law firm clearly provided for the payment of such interest, as set forth in the engagement letter." The inability of the Thompsons to pay their experts was a direct result of Schmitz's violations of his fiduciary duties. The district court did not abuse its discretion to fashion an appropriate remedy for violations of N.D.C.C. ch. 10–19.1.

## VI.

[¶ 26] Schmitz argues the district court abused its discretion in awarding pre-judgment interest for his conversion of the Thompsons' capital contribution and Schmitz's contribution. Schmitz relies on *United Hospital v. D'Annunzio*, 514 N.W.2d 681 (N.D.1994) and *Midland Diesel Service & Engine Co. v. Sivertson*, 307 N.W.2d 555 (N.D.1981), to support his position that an award of pre-judgment interest is not appropriate in this case. But those cases consider pre-judgment interest in the context of an action for unjust enrichment, not in the context of a shareholder derivative action under the NDBCA. Likewise, the Thompsons rely on *Harwood State Bank v. Charon*, 466 N.W.2d 601 (N.D.1991) as a basis for allowing pre-judgment interest. They characterize Schmitz's corporate conversion as an intentional tort instead of a breach of numerous fiduciary duties or, more aptly, a misapplication of corporate assets. *See* N.D.C.C. § 10–19.1–115(1)(b)(5). *Charon* did not, however, address conversion of corporate assets by a director and shareholder under the NDBCA.

[¶ 27] The appropriate standards for awarding pre-judgment interest in this action are found in N.D.C.C. §§ 10–19.1–85.1 and 10–19.1–115—the provisions of law cited by the district court in its findings of fact and conclusions of law. These statutes grant the district court "broad equitable powers to remedy breaches of duties by corporate officers and shareholders." *Brandt v. Somerville*, 2005 ND 35, ¶ 23, 692 N.W.2d 144. We review a district court's award of pre-judgment interest under N.D.C.C. §§ 10–19.1–85.1 and 10–19.1–115 under the abuse-of-discretion standard. *Brandt*, at ¶ 23.

[¶ 28] Section 10–19.1–85.1, N.D.C.C., allows the district court to "grant equitable relief it considers just and reasonable in the circumstances and award expenses, including attorney's fees and disbursements, to the shareholders." Further, N.D.C.C. § 10–19.1–115(6) gives the district court the discretion to "award reasonable expenses, including attorney's fees and disbursements, to any of the other parties." The broad language of these provisions contemplates an award of pre-judgment interest where a director or shareholder violates fiduciary duties under N.D.C.C. ch. 10–19.1 or acts "arbitrarily, vexatiously, or otherwise not in good faith" under § 10–19.1–115(6). *See, e.g., Foy v. Klapmeier*, 992 F.2d 774, 778, 781 (8th Cir. 1993) (remanding to calculate an award of pre-judgment interest in a shareholder derivative action under Minn.Stat. § 302A.751, the statutory equivalent to N.D.C.C. § 10–19.1–115).

[¶ 29] *Thompson I* required the district court, on remand, to find the Thompsons' $150,000 contribution and Schmitz's $300,000 contribution of a future stream of income stemming from the use of RES's rental trailers, equipment, and employees to be corporate assets subject to dissolution. *Thompson I*, at ¶ 23. The district

court's findings of fact repeatedly highlight Schmitz's corporate malfeasance, especially in his misapplication of ARRK's corporate assets. Specifically, the district court found Schmitz misapplied the Thompsons' $150,000 capital contribution on August 1, 2001—the time of the formation of ARRK. Moreover, the district court found Schmitz misapplied his capital contribution on August 15, 2005—the time of dissolution of ARRK. Schmitz deprived ARRK of its corporate assets the moment he misapplied them. Accordingly, the district court abided by the mandates of *Thompson I* and therefore did not abuse its discretion in awarding pre-judgment interest.

## VII.

[¶ 30] We affirm the third and fourth amended judgments of the district court. The district court complied with the mandates of *Thompson I* and did not abuse its discretion in awarding the Thompsons half of the value of ARRK's corporate assets plus pre-judgment interest, reasonable attorney's fees, expenses, and costs, including expert witness fees and interest.

[¶ 31] DALE V. SANDSTROM, CAROL RONNING KAPSNER, MARY MUEHLEN MARING, JJ., and DAVID W. NELSON, D.J., concur.

[¶ 32] The Honorable DAVID W. NELSON, D.J., sitting in place of CROTHERS, J., disqualified.