2004 ND 109

**Roland C. RIEMERS, Plaintiff and Appellant**

v.

**Deputy Paul ANDERSON, Sheriff Michael Crocker, State's Attorney Stuart A. Larson, Traill County, Trooper David Pulju, Defendants and Appellees**

**Patrolman Paul Borud, and City of Mayville, Defendants.**

**Nos. 20030317, 20030318.**

Supreme Court of North Dakota.

June 3, 2004.

Roland C. Riemers, Grand Forks, N.D., pro se.

Ronald F. Fischer (argued) and Michael E. Scurry, Pearson Christensen, Grand Forks, N.D., for defendants and appellees Deputy Paul Anderson, Sheriff Michael Crocker, State's Attorney Stuart A. Larson, and Traill County.

Douglas Alan Bahr, Solicitor General, Attorney General's Office, Bismarck, N.D.,

for defendant and appellee Trooper David Pulju.

MARING, Justice.

■ [¶ 1] Roland C. Riemers appealed a district court memorandum decision and order for judgment[1] denying his motions for default judgment and summary judgment, granting defense motions for summary judgment, dismissing his complaints, and awarding costs and disbursements in his actions against Traill County Deputy Sheriff Paul Anderson, Traill County Sheriff Michael Crocker, Traill County State's Attorney Stuart Larson, the City of Mayville, Patrolman Paul Borud, and Trooper David Pulju. We conclude one claim is barred by the doctrine of collateral estoppel and the other has not been shown to have any basis in law or fact, and we affirm.

I

[¶ 2] On March 4, 2000, Riemers and his then-wife, Jenese A. Peters–Riemers, had an argument as Peters–Riemers was attempting to leave the marital residence with their son. Riemers broke a finger when he struck Peters–Riemers, fracturing a bone in Peters–Riemers' face. Riemers was arrested for assault. Peters–Riemers was not arrested.

[¶ 3] In 2003, Riemers sued Anderson, Crocker, Larson, Pulju, Borud, and the City of Mayville, alleging that, in responding to the altercation on March 4, 2000, officers "did ... falsely arrest Plaintiff for assault and failed to arrest the assaulter, Plaintiff's wife Jenese Peters–Riemers." Riemers further alleged:

4. That Officer Defendants ignored Plaintiff's injuries and domestic abuse and did not report, nor did they provide, or see that a physician provided, information regarding a domestic violence assault to the Plaintiff as required by N.D.C.C. 43–17–41. As a result, Plaintiff was not provided mandated assistance for his domestic abuse. Said denial due to sexual discrimination as well as lack of training by said officers by Respondent Superiors.

5. As a result of Plaintiff's arrest he was subsequently falsely prosecuted (K00–78) by Stuart Larson, States Attorney for the County of Traill. And on 24 April 2001 Plaintiff entered an Alfred plea of no-contest (rather than an admission to the facts underlying the crime in order to avoid the high cost of a jury trial).

6. As a result of this false arrest, lack of reporting and failure to arrest Jenese, on 14 March 2000 a Temporary Protection Order was placed against Plaintiff, and on 10 April 2000 one year Protection Order was placed against Plaintiff.

7. These orders, and various proceedings, resulted in Plaintiff being declared a domestic abuser and losing considerable assets, property, good reputation, custody and visitation with his infant son. As well as the denial of community resources for his domestic abuse and the infliction of severe emotional pain and distress on himself and his children from Jenese.

1. Riemers has attempted to appeal from the court's memorandum opinion. As we noted in another appeal by Riemers, a memorandum opinion is not appealable, but "an attempted appeal from a memorandum opinion will be treated as an appeal from a subsequently entered consistent judgment, if one exists." *Flattum–Riemers v. Flattum–Riemers*, 2003 ND 70, ¶ 4 n. 2, 660 N.W.2d 558. As in that case, a consistent judgment was subsequently entered, and we treat this as an appeal from that judgment.

8. That Sheriff Michael Crocker, States Attorney Stuart Larson, the County of Hillsboro, and the City of Mayville, as Respondents Superior, have equally and separately been negligent in this matter by failing to provide said officers under their control the training and policies required for domestic abuse as required under N.D.C.C. 14–07.1–14.

9. As a result of such torturous or illegal acts, Plaintiff and his children have suffered the infliction of emotional pain, he has been falsely prosecuted for assault and domestic violence, sexually discriminated against, loss due process and equal protection rights under the state and federal constitutions, loss property, loss consortium with children, denied needed community domestic violence services, had attorney fees and legal costs, and loss reputation. For this Plaintiff asks judgment of $550,000 in compensatory damages and $10,000,000 in nominal damages, together, equally and separately against the Defendants. Plus any and all other remedies under tort, law or equity Plaintiff may be entitled to including but not limited to attorney fees, costs, and disbursements.

[¶ 4] Riemers also commenced another lawsuit against Crocker and Traill County, alleging he was arrested for assault on March 4, 2000, and incarcerated at the Traill County jail without being convicted of a crime. Riemers further alleged:

4. During the time of incarceration Plaintiff was not segregated from convicted persons or given better treatment appropriate to his status as an un-convicted person, or treated with humanity and respect by the jail staff and was also forced to wear an orange prison uniform.

5. Such treatment being a violation of Plaintiff's human rights as a non-convicted person under Part III, Article 10(1 & 2) of the International Covenant on Civil and Political Rights.

6. As a result of such denial of human rights Plaintiff suffered the infliction of emotional pain; was denied timely and needed community domestic violence and medical services; incurred additional attorney fees and legal costs; and suffered loss of reputation. For this Plaintiff asks a judgment of $1,000 in compensatory damages and $10,000 in nominal damages, equally and separately, against the Defendants. Plus any and all other remedies under law or equity he may be entitled to including attorney fees, costs, and disbursements.

[¶ 5] The trial court issued an order consolidating the two cases. The trial court issued an order dismissing Patrolman Paul Borud and the City of Mayville, in accordance with a stipulation of the parties. The trial court also issued an order for judgment dismissing Riemers' complaint against Pulju and the State, finding, among other things, that Pulju was sued in his official capacity as a Highway Patrol Officer; therefore, the lawsuit was against the State. The court ruled it lacked jurisdiction over either the State or Pulju, individually, because Riemers "did not effectuate service of the Summons and Complaint" on either the State or Pulju. The court also determined it lacked jurisdiction over the State because Riemers failed to present a written notice to the director of the office of management and budget within 180 days after his alleged

injury, as required by N.D.C.C. § 32–12.2–04(1).

[¶ 6] On September 3, 2003, the trial court issued a memorandum decision and order for judgment denying Riemers' motions for default judgment and summary judgment, granting the Traill County defendants' motions for summary judgment, ordering entry of a judgment dismissing Riemers' complaints against the Traill County defendants, and awarding them their costs and disbursements. Defense affidavits averred Riemers was provided medical care before being incarcerated, and the trial court found Riemers provided "absolutely no evidence that he suffered from any serious injury that was not properly attended to while he was incarcerated for roughly 41 hours." The trial court further explained, among other things:

> Of note, at the July 31, 2003 hearing Riemers indicated that probable cause existed to arrest and prosecute him for committing domestic violence on March 4, 2000. His complaint against the Traill County Defendants is apparently that they did not also arrest and prosecute Jenese for committing domestic violence. However, this Court notes that the North Dakota Supreme Court reviewed and rejected Riemers allegation that Jenese had also committed domestic violence in the subject March 4, 2000 incident. . . .
>
> With respect to Riemers' allegation in Civil No. 49–03–C–0035 that his stay at the Traill County jail amounted to a violation of the *International Covenant on Civil and Political Rights* ("ICCPR"), Part III, Article 10 (1 & 2), . . ., the ICCPR does not provide a legal basis for Riemers to pursue claims for civil damages against the Traill County Defendants.

[¶ 7] The court ruled that the state's attorney's decision to prosecute Riemers and the decision to not prosecute Jenese Peters–Riemers were subject to absolute prosecutorial immunity and that any claims against the Traill County defendants that were "not foreclosed by the doctrine of absolute prosecutorial immunity" were "barred by the doctrines of qualified immunity and/or statutory immunity under North Dakota law."

[¶ 8] On November 3, 2003, Riemers filed a notice of appeal from the trial court's September 3, 2003, memorandum decision and order for judgment. A judgment was entered on September 9, 2003.

## II

[¶ 9] Riemers has raised the following issues on appeal:

*A. Traill County 49–03–C–00034 (sexual bias in arrest, civil rights, etc.)*

Did the Court err in granting the defendants' motion for summary judgment:

1. By ruling that the defendants had immunity for their actions?

2. By ruling on the issues of malicious prosecution, false imprisonment, and two year statute of limitations instead of civil right denials?

3. By granting summary judgment without first allowing Riemers any discovery or to amend his complaint?

4. By denying Riemers his state constitutional right to a remedy for the injuries he suffered from the Defendants' biased and unlawful behavior?

5. By consolidating the two cases after first allowing Traill County to file consolidated motions and pleadings?

6. By dismissing Trooper Pulju from the law suit?

7. By awarding costs and disbursements to the Defendants?

8. By ruling on the admissibility of evidence contrary to Rule 56?

*B. Traill County 49–03–C–00035 (rights of non-convicted under ICCPR)*

1. Did the Court err by denying Riemers summary judgment, but granting summary judgment to the Defendants?

### III

[¶ 10] This appeal comes to us in the posture of an appeal from a summary judgment, which we have recently addressed:

> Summary judgment is a procedural device for promptly disposing of a lawsuit without a trial if there are no genuine issues of material fact or inferences which can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Whether summary judgment was properly granted is a question of law which we review de novo on the entire record. On appeal, this Court decides if the information available to the trial court precluded the existence of a genuine issue of material fact and entitled the moving party to summary judgment as a matter of law. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of a claim on which they will bear the burden of proof at trial.

> A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations. Factual assertions in a brief do not raise an issue of material fact satisfying Rule 56(e). Nor may a party merely reassert the allegations in his pleadings in order to defeat a summary judgment motion.

*Zuger v. State,* 2004 ND 16, ¶¶ 7,8, 673 N.W.2d 615 (citations omitted).

. A.

■ [¶ 11] With the exception of the issue he raised with regard to costs and disbursements, we need not address the issues Riemers has raised in his action based upon the decision to arrest and prosecute him, but not his former wife, in connection with the incident that occurred on March 4, 2000, because the issues upon which this action is based have been decided and may not now be relitigated.

■ [¶ 12] "Courts bar relitigation of claims and issues to promote the finality of judgments, which increases certainty, discourages multiple litigation, conserves judicial resources, and avoids wasteful expense and delay." *Ohio Cas. Ins. Co. v. Clark,* 1998 ND 153, ¶ 23, 583 N.W.2d 377. "[C]ollateral estoppel, or issue preclusion, generally forecloses the relitigation, in a second action based on a different claim, of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit." *Reed v. University of N.D.,* 1999 ND 25, ¶ 9, 589 N.W.2d 880 (quoting *Hofsommer v. Hofsommer,* 488 N.W.2d 380, 383 (N.D.1992) (citations omitted)).

■ [¶ 13] In earlier litigation, the trial court had determined Riemers committed domestic violence and Peters–Riemers did not. In *Peters–Riemers v. Riemers,* 2002 ND 72, 644 N.W.2d 197, *cert. denied,* 537 U.S. 1195, 123 S.Ct. 1252, 154 L.Ed.2d 1031 (2003), we affirmed a judgment dissolving the marriage of Riemers and Peters–Riemers. Riemers' domestic violence and Peters–Riemers' alleged domestic violence were addressed at length in the opinion. The trial court made findings about Riemers committing domestic violence against Jenese Peters–Riemers, in connection with the incident on March 4, 2000, which we held were supported by the evidence. *Id.* at ¶ 15. Riemers asserted the

trial court erred in finding he committed domestic violence, but Peters–Riemers did not. We concluded the trial court's findings were supported by the evidence. *Id.* at ¶ 16. Thus, the basis for Riemers' suit—that he was falsely arrested for assault and his former wife should have been, but was not, arrested—was previously litigated and determined, precluding Riemers from relitigating those issues. Because Riemers was collaterally estopped from relitigating those issues, we need not address the issues he has raised in his action based upon the decision to arrest and prosecute him, but not Peters–Riemers. We do not answer questions unnecessary to the determination of an appeal. *Cass County Joint Water Res. Dist. v. 1.43 Acres of Land*, 2002 ND 83, ¶ 39, 643 N.W.2d 685; *Heald v. Strong*, 24 N.D. 120, 131–34, 138 N.W. 1114, 1119–20 (1912).

### B. Costs

[¶ 14] The judgment entered awarded costs and disbursements of $256.20. Riemers contended the maximum amount awarded should have been $5. Crocker, Anderson, Larson, and Traill County requested that the matter be remanded to the trial court for determination. Under N.D.R.App.P. 35(a)(3), we remanded this case to the trial court for determination of objections to costs and disbursements. On remand, the trial court awarded the defendants statutory fees of $10 under N.D.C.C. § 28–26–02, $100 for filing fees under N.D.C.C. § 28–26–10, and $96 for copying costs of 960 pages at $0.10 per page under N.D.C.C. § 28–26–06, for a total cost and disbursement award of $206. An amended judgment of dismissal was entered on April 13, 2004. An award of costs under N.D.C.C. § 28–26–02 is discretionary. *See Lemer v. Campbell*, 1999 ND 223, ¶ 11, 602 N.W.2d 686. An award of costs under N.D.C.C. § 28–26–10 is discretionary. *Uren v. Dust–Tex, Inc.*, 2002 ND

81, ¶ 31, 643 N.W.2d 678. A trial court's decision on an award of disbursements under N.D.C.C. § 28–26–06 will be overturned only if an abuse of discretion is shown. *Braunberger v. Interstate Eng'g, Inc.*, 2000 ND 45, ¶ 14, 607 N.W.2d 904. An abuse of discretion is never assumed; the burden is on a party seeking relief to affirmatively establish it. *Jundt v. Jurassic Res. Dev. of North America, L.L.C.*, 2003 ND 9, ¶ 10, 656 N.W.2d 15. From our review, we conclude Riemers has not shown that the trial court abused its discretion in awarding costs and disbursements.

### C.

[¶ 15] Riemers' second action is based upon his treatment while incarcerated in the Traill County jail and "is based solely on the denial of his civil rights as a non-convicted person under the *International Covenant on Civil and Political Rights (here-in-after "ICCPR")*, U.N.T.S. No. 14688 (1976)."

[¶ 16] "[T]he treaty was ratified with numerous reservations conforming the United States' obligations under the ICCPR to the requirements of the Constitution, and with the declaration that the ICCPR is not self-executing. Accordingly, this treaty does not create a private cause of action in United States courts." *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 164 n. 35 (2nd Cir.2003) (citations omitted). *See also Wesson v. U.S. Penitentiary Beaumont, TX*, 305 F.3d 343, 348 (5th Cir.2002), *cert. denied*, 537 U.S. 1241, 123 S.Ct. 1374, 155 L.Ed.2d 212 (2003) ("the treaty is not self-executing and Congress has not enacted implementing legislation"); *Buell v. Mitchell*, 274 F.3d 337, 372 (6th Cir.2001) (ICCPR is not self-executing, and Congress has not enacted implementing legislation); *Beazley v. John-*

*son,* 242 F.3d 248, 267 (ICCPR "is *not* self-executing").

[¶ 17]   Riemers has neither drawn our attention to any decisions construing or applying the covenant, nor provided persuasive reasoning showing it was either applicable to or violated by his incarceration in the Traill County jail.   Riemers has, therefore, not shown that his complaint has any basis in fact or law.

### D.

[¶ 18]   We conclude the trial court did not err in denying Riemers' motions for default or summary judgment or in granting the defendants' motions for summary judgment, or in dismissing Riemers' complaints and awarding costs and disbursements.

### IV

[¶ 19]   Affirmed.

[¶ 20] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.