2006 ND 176

Debora HENG, Plaintiff and Appellee

v.

ROTECH MEDICAL CORPORATION and PSI Healthcare, Inc., d/b/a Arrow-health Medical Supply, Defendants and Appellants.

No. 20050311.

Supreme Court of North Dakota.

Aug. 2, 2006.

Kirsti Broeder Hourigan (argued) and Patricia R. Monson (on brief), Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, N.D., for plaintiff and appellee.

Matthew D. Greenley (argued) and Adele Hedley Page (appeared), Page Law Firm, LLC, Fargo, N.D., for defendants and appellants.

SANDSTROM, Justice.

[¶1] Rotech Medical Corporation and PSI Healthcare, Inc., doing business as Arrowhealth Medical Supply (collectively "Arrowhealth"), appealed from a judgment

awarding Debora Heng $35,195 in damages for her retaliatory discharge claim against the companies and $220,762.92 for her attorney fees, costs, and disbursements. We affirm the award of damages and attorney fees, but we reverse the award of costs insofar as it includes mediation and electronic legal research fees.

I

[¶ 2] Arrowhealth is a medical equipment company that provides on-site setup of home oxygen concentrators and portable liquid oxygen units in North Dakota and other states. Arrowhealth allowed its service technicians, who were not licensed healthcare specialists or respiratory therapists, to set up home oxygen concentrators for its North Dakota patients, after which a respiratory therapist followed up to perform a patient assessment. On August 10, 2001, Heng was hired to manage Arrowhealth's Fargo office. Adam Blumenshein was the regional manager and Heng's immediate supervisor during her employment.

[¶ 3] In November 2001, Arrowhealth hired Michael Jacobson as a service technician. During his interview, Jacobson asked Heng whether it was legal to have service technicians assemble oxygen systems and instruct patients on their use, because his previous employer had prohibited him from performing those duties as a service technician. Heng told Jacobson that she believed it was legal, and afterwards asked Blumenshein, who told her Arrowhealth's use of service technicians in this manner complied with North Dakota regulations. Jacobson and another employee continued to question the legality of the practice, and on December 19, 2001, Heng met in Duluth, Minnesota, with Blumenshein and Julie Johnson, who was a regional director of clinical and marketing for Arrowhealth. Heng brought the subject up at the meeting, and after reading the regulation, Blumenshein and Johnson both said Arrowhealth was in compliance.

[¶ 4] After the meeting, Heng was still concerned that Arrowhealth was violating the law and sought further clarification. On December 21, 2001, Heng called the North Dakota Respiratory Care Board and talked to Board Chairman David Muggerud. Heng read the job description for service technicians to Muggerud, and he told her Arrowhealth's practice of having service technicians assemble oxygen systems and instruct customers in their use violated N.D. Admin. Code § 105–03–01–02, which provides:

> Home medical equipment and delivery. North Dakota Century Code chapter 43–42 prohibits the setup and instruction of medical devices related to the practice of respiratory care, gases, and equipment by a nonlicensed health care professional. The delivery and maintenance of medical devices related to the practice of respiratory care, gases, and equipment by a nonlicensed health care professional for the expressed purpose of self-care by a patient or gratuitous care by a friend or family member in the home or extended care facility is permitted.

> This maintenance or delivery by the nonlicensed person does not include performing patient assessment, having direct patient contact or patient care relating to home respiratory care, or representing oneself as a certified or registered respiratory care practitioner.

Heng immediately relayed Muggerud's opinion to Johnson, the regional director of clinical and marketing, who told Heng that she should stop having service technicians assemble oxygen delivery systems or instruct customers for the time being, and that she would contact regional manager Blumenshein about the issue. Heng or-

dered the Fargo office employees to discontinue the practice for North Dakota customers.

[¶ 5] On December 26, 2001, Heng telephoned Blumenshein while he was on vacation for clarification on how to handle company compliance with the regulation on a long-term basis. Blumenshein told Heng to violate the regulation if necessary and have drivers perform the setups. He expressed displeasure with the regulation and its effect on the company's contract with the Veterans Administration, which comprised almost 70 percent of Arrowhealth's business in Fargo. Blumenshein was confident that the company's legal counsel could eventually work out any problems.

[¶ 6] On January 3, 2002, Blumenshein and Johnson met with Heng and other members of the staff at Arrowhealth's Fargo office. They discussed how the Fargo office was going to ensure compliance with the regulation. Blumenshein also informed Heng she needed to be more friendly with the marketing person at the Fargo office for the office to succeed. On January 18, 2002, Blumenshein went to the Fargo office and terminated Heng's employment. According to Blumenshein, he terminated Heng because she created a hostile work environment and alienated referral sources.

[¶ 7] Heng sued Arrowhealth in July 2002, alleging breach of contract, retaliatory termination in violation of N.D.C.C. § 34–01–20, and intentional infliction of emotional distress. The district court granted Arrowhealth summary judgment dismissal of Heng's retaliatory termination and breach of contract claims, and Heng voluntarily dismissed her claim for intentional infliction of emotional distress. In *Heng v. Rotech Med. Corp.*, 2004 ND 204, ¶¶ 1, 37, 38, 688 N.W.2d 389 ("*Heng I* "), we affirmed the summary judgment dismissal of the breach of contract claim, but concluded there were disputed issues of material fact on the retaliatory discharge claim that precluded summary judgment. We reversed the judgment insofar as it dismissed the retaliatory discharge claim and awarded Arrowhealth attorney fees based on that claim, and remanded for further proceedings. *Id.* at ¶ 39. Following a bench trial on remand, the district court ruled in favor of Heng on her retaliatory discharge claim, awarded her $35,195 in damages, and ordered Arrowhealth to pay Heng $220,762.92 for her attorney fees, costs, and disbursements.

## II

[¶ 8] Arrowhealth argues the modified burden-shifting test based on *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and adopted by this Court in *Schweigert v. Provident Life Ins. Co.*, 503 N.W.2d 225, 229 (N.D.1993), for purposes of analyzing claims under the North Dakota Human Rights Act, N.D.C.C. ch. 14–02.4, should not be applied to retaliatory discharge claims brought under N.D.C.C. § 34–01–20. According to Arrowhealth, the modified *McDonnell Douglas* test, applied in conjunction with N.D.R.Ev. 301, "usurps the ultimate question of retaliation from the district court."

[¶ 9] We do not address issues raised for the first time on appeal. *See, e.g., Edwardson v. Lauer*, 2004 ND 218, ¶ 9, 689 N.W.2d 407. As we said in *Chapman v. Chapman*, 2004 ND 22, ¶ 7, 673 N.W.2d 920 (internal quotations and citations omitted):

> One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so it could intelligently rule on it. The purpose of an appeal is to review the actions of the trial court, not

to grant the appellant an opportunity to develop and expound upon new strategies or theories.

[¶ 10] In *Heng I*, 2004 ND 204, ¶ 36 n. 1, 688 N.W.2d 389, we noted "[t]he parties apparently agreed, and therefore we will assume for purposes of reviewing the summary judgment, that the *McDonnell Douglas* rule applies to a retaliatory discharge claim under N.D.C.C. § 34–01–20." In its trial memorandum on remand, Arrowhealth stated that "[a] claim under N.D.C.C. § 34–01–20 is analyzed under the McDonnell Douglas burden-shifting framework," citing to *Dahlberg v. Lutheran Soc. Servs.*, 2001 ND 73, ¶ 31, 625 N.W.2d 241. In *Dahlberg*, at ¶ 31 n. 3, this Court noted that the district court in that case analyzed the plaintiff's retaliation claim under the *McDonnell Douglas* burden-shifting framework, and because the issue had not been raised, we refused to "decide the applicability of *Schweigert* to a claim for retaliation under ·N.D.C.C. § 34–01–20." Several paragraphs later in its trial memorandum, Arrowhealth asserted, "At all times, Plaintiff bears the burden of showing that her termination was motivated by retaliation for protective conduct," again citing to *Dahlberg*, at ¶ 31. Arrowhealth did not contend in the district court that the modified *McDonnell Douglas* burden-shifting framework does not apply to retaliatory discharge claims under N.D.C.C. § 34–01–20. Although Arrowhealth asserts that its vague allegations in its trial memorandum ·are sufficient to raise the issue for review, the district court obviously did not view these allegations as challenging the applicability of the modified burden-shifting analysis to retaliatory discharge claims, because it did not address the issue. Because Arrowheath failed to raise this issue in the district court, we do not address it.

## III

[¶ 11] Arrowhealth challenges several of the district court's findings and conclusions.

[¶ 12] North Dakota's "whistleblower" statute, N.D.C.C. § 34–01–20(1)(a), authorizes an employee to bring a civil action for retaliatory termination if the employer discharges the employee because the employee "in good faith, reports a violation or suspected violation of federal, state, or local law, ordinance, regulation, or rule to an employer, a governmental body, or a law enforcement official." To establish a prima facie case for retaliatory discharge under the statute, the employee must show (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) the existence of a causal connection between the employee's protected activity and the employer's adverse action. *Dahlberg*, 2001 ND 73, ¶ 34, 625 N.W.2d 241. If the employee establishes a prima facie case, the modified *McDonnell Douglas* burden-shifting framework under which this case was tried requires the employer to prove by a preponderance of the evidence that it had a legitimate, nonretaliatory reason for terminating the employee's employment. *Heng I*, 2004 ND 204, ¶ 36, 688 N.W.2d 389.

[¶ 13] Whether an employee has established a prima facie case of retaliatory discharge is a question of law fully reviewable on appeal. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir.1997); *Baker v. Wilmington Trust Co.*, 320 F.Supp.2d 196, 200 (D.Del.2004); *Johnston v. Henderson*, 144 F.Supp.2d 1341, 1355 (S.D.Fla.), *aff'd*, 277 F.3d 1380 (11th Cir.2001). Once an employee presents evidence from which a rational factfinder could find that the employee engaged in protected activity, the employer took

adverse action against the employee, and the existence of a causal connection between the employee's protected activity and the employer's adverse actions, those questions, as well as the question whether the employer's discharge of the employee was motivated by a legitimate reason or an unlawful reason, are questions of fact. *Heng I*, 2004 ND 204, ¶¶ 20, 34, 37, 688 N.W.2d 389. Under N.D.R.Civ.P. 52(a), findings of fact "shall not be set aside unless clearly erroneous." A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the district court made a mistake. *Edward H. Schwartz Constr., Inc. v. Driessen*, 2006 ND 15, ¶ 6, 709 N.W.2d 733. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and our viewing the evidence differently does not entitle us to reverse the district court. *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144. On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the district court's opportunity to judge the credibility of the witnesses. *Id.*

A

[¶ 14] Arrowhealth argues the district court erred in concluding that Heng established a prima facie case. Specifically, Arrowhealth contends the evidence is insufficient to support the court's findings that Heng's report of the violation of the regulation to her employer was made in good faith and that her termination from employment was causally related to a good-faith report of a violation of law.

[¶ 15] In *Dahlberg*, 2001 ND 73, ¶ 36, 625 N.W.2d 241 (internal citation omitted), we quoted from the Minnesota Supreme Court's decision in *Obst v. Microtron, Inc.*, 614 N.W.2d 196, 202 (Minn.2000), regarding the reporting requirement of the whistle-blower statute:

> In order to determine whether a report of a violation or suspected violation of law is made in good faith, we must look not only at the content of the report, but also at the reporter's purpose in making the report. The central question is whether the reports were made for the purpose of blowing the whistle, i.e., to expose an illegality. We look at the reporter's purpose at the time the reports were made, not after subsequent events have transpired.

[¶ 16] The district court found that Heng believed Arrowhealth was not complying with North Dakota respiratory care regulations, that she informed regional manager Blumenshein and regional director Johnson of her belief, and that she continually sought clarification from them on how to effectuate corporate compliance with the regulation. The court reasoned that "[a]s the supervisor of the service technicians who are actually violating the regulation [Heng] faced potential consequences for regulation violations or possible patient healthcare concerns due to this practice" and that Heng's "report of this violation was virtually mandated by [Arrowhealth's] code of conduct, employee handbook and compliance training video." The court found "no evidence that [Heng] made the report for purposes other than to assure company compliance with North Dakota law." Although Arrowhealth presented evidence that could be viewed as bad faith on Heng's part, there is also substantial contrary evidence in the record to support the court's finding. Heng testified she reported the violation out of concern for Arrowhealth's oxygen patients, which included her mother before her death. A friend Heng consulted, who is a judge in Minnesota, testified that Heng

was concerned about the effect of Arrowhealth's violation on its patients and that he encouraged her to research the matter further and "get it resolved." We conclude the district court's finding that Heng's report of the violation was made in good faith is not clearly erroneous.

[¶ 17] We also conclude the district court's finding of a causal connection between Heng's reports of unlawful activity and her termination is not clearly erroneous. In *Heng I*, 2004 ND 204, ¶ 28, 688 N.W.2d 389 (internal citations omitted), this Court said circumstantial evidence may provide an inference of causation in a retaliatory discharge case:

Proximity in time between the protected activity and the adverse employment action is "particularly significant." The fact that the employee's complaints were directed toward or involved the person who ultimately fired her may also provide an inference that the adverse action was related to the protected activity.

*See also Anderson v. Meyer Broad. Co.*, 2001 ND 125, ¶¶ 35, 36, 630 N.W.2d 46. In reversing the summary judgment in this case, we also ruled "a fact-finder could infer Heng's firing was reasonably proximate to her reports of suspected violations." *Heng I*, at ¶ 29.

[¶ 18] The trial court found a causal connection based on "Blumenshein's reaction to the fact that the North Dakota office would have to comply with the North Dakota regulation, his concern on how this would impact the work being done for the VA cont[r]act (which his company had obtained through a low bid), his direction to [Heng] to violate the regulation if she had to and the proximity in time between [Heng's] reports and her firing." There is evidence that using respiratory therapists instead of service technicians to perform setups and provide education services would be more costly to Arrowhealth.

The court noted that Heng's termination occurred only 13 working days after she, "for probably the second or third time," reported the violation at the December 19, 2001, meeting, and Blumenshein had been on vacation from December 20, 2001, to January 2, 2002. Blumenshein, in a tape-recorded conversation with Heng, said he "hate[d]" the effect the regulation would have on the Veterans Administration contract, the state regulation was a "joke," Arrowhealth's lawyers would take it "to a higher level," and state regulators "would get hit upside the head with a hammer" over their interpretation of the regulation. The circumstantial evidence, considered in its totality, supports the district court's finding of a causal connection between Heng's good-faith report of illegal activity and her termination.

[¶ 19] We conclude the district court did not err in concluding that Heng established a prima facie case.

B

[¶ 20] Arrowhealth argues the district court erred in finding it failed to prove that it terminated Heng for legitimate, nonretaliatory reasons.

[¶ 21] In *Heng I*, 2004 ND 204, ¶ 37, 688 N.W.2d 389 (citations omitted), we explained:

The [*McDonnell Douglas*] rule explicitly governs the burden of persuasion at trial and creates a presumption of wrongful employment activity if the employee presents a prima facie case. The ultimate question for the factfinder is whether the employer's adverse action was motivated by a legitimate reason or an unlawful reason. By presenting a prima facie case of retaliatory discharge, the employee has created a genuine issue of material fact on the question of why she was fired, and the employer's

alleged nonretaliatory reasons for the termination merely go to that question of fact. Accordingly, if the employee has presented a prima facie case by presenting evidence from which the factfinder could find she engaged in protected activity, the employer took adverse action, and there was a causal connection between the activity and the adverse action, the employer's presentation of evidence of a legitimate, nonretaliatory reason for its action merely creates an issue of fact, . . . .

[¶ 22] Arrowhealth introduced evidence that regional manager Blumenshein was aware of nine behavioral incidents involving Heng. These incidents concerned her strained relationship with another Fargo office employee, a referral source who told Blumenshein she was upset by the way Heng treated her during an office visit, and a "volatile conversation" Heng had with Mark Rye, a Veterans Administration employee and referral source. On the basis of these incidents, Arrowhealth contended Heng was terminated because she caused a hostile work environment and alienated referral sources. However, the district court found Arrowhealth's stated reasons for terminating Heng were pretextual. The court found that Blumenshein had failed to follow any of the disciplinary procedures contained in Arrowhealth's employee handbook and had failed to conduct an investigation into the complaints as called for by the handbook. The court found that, had there been an investigation, Arrowhealth would have learned "the stated reasons for [Heng's] termination did not exist[]." The court found that Heng "did not alienate the Veterans Administration as a referral source," that Heng's "supposed, failure to communicate with [the Fargo office employee] was a result of . . . Blumenshein telling [Heng] not to talk to her," and that Heng's treatment of the referral source was merely a "miscommu-

nication [that] could easily have been cleared up." The court further found that "the office hostility that was cited had existed prior to [Heng's] hiring and seemed centered on another employee rather than [Heng]." These findings are supported by the evidence.

[¶ 23] The district court reasoned that, "[w]hile [Arrowhealth's] employees' handbook gives [Heng] no contractual rights, [Arrowhealth's] total disregard for company discipline policy evidences motivation for terminating [Heng] other than the reasons stated," and that "[Arrowhealth's] rush to terminate [Heng] without any meaningful analysis of the situation, is strong evidence of the pretextural [sic] nature of [Arrowhealth's] reasons for terminating [Heng]." An employer's failure to follow its own policies may support an inference of pretext, *see Floyd v. State of Missouri Dept. of Soc. Servs.*, 188 F.3d 932, 937 (8th Cir.1999); *Young v. Warner–Jenkinson Co., Inc.*, 152 F.3d 1018, 1024 n. 6 (8th Cir.1998), but not when the departure in policy is applied to all employees. *See Floyd*, at 937; *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 864–65 (8th Cir.1997). Although Blumenshein testified that he had never "followed Arrowhealth's progressive discipline policy," the district court did not find his testimony particularly credible. The court specifically noted in its decision that "Blumenshein, admittedly, has a bad memory."

[¶ 24] Having reviewed the evidence, we conclude the district court's finding that Arrowhealth failed to meet its burden of proving it terminated Heng for nonretaliatory reasons is not clearly erroneous.

## IV

[¶ 25] Arrowhealth argues it was prejudiced by the district court's exclusion

of deposition testimony it offered in evidence during the course of the trial.

[¶ 26] In its pretrial statement, Arrowhealth indicated it would call Johnson, the regional director of clinical and marketing, and Rye, a Veterans Administration employee and referral source, as witnesses. Heng's counsel requested Arrowhealth's counsel to make Johnson, a Minnesota resident who could not be subpoenaed, available to testify during Heng's case in chief, but Arrowhealth's counsel refused. The district court granted Heng's counsel's motion to read portions of Johnson's deposition testimony into the record, but denied Arrowhealth's motion to read additional portions of her deposition testimony at that time. The court ruled Arrowhealth could not introduce its portions until the company presented its defense. After excerpts of Johnson's deposition were read during Heng's case in chief, the court nevertheless offered Arrowhealth's counsel an opportunity to introduce additional excerpts, but she declined, stating, "I'll deal with it through my witness." Later during the trial, Arrowhealth's counsel informed the court that Rye would not be called as a witness. The court granted Heng's counsel's motion to introduce portions of Rye's deposition, but did not allow Arrowhealth's counsel to introduce the portions of Rye's deposition that counsel preferred.

[¶ 27] The admission of deposition testimony under N.D.R.Civ.P. 32(a) lies within the district court's discretion, and reversal is appropriate only upon a clear showing that the court abused its discretion. *Fed. Deposit Ins. Corp. v. Jahner*, 506 N.W.2d 57, 59 (N.D.1993). A court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, or when its decision is not the product of a rational mental process. *Davis v. Killu*, 2006 ND 32, ¶ 6, 710 N.W.2d 118. Even when a court commits an error on an evidentiary matter, "[n]o error in either the admission or the exclusion of evidence ... is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." N.D.R.Civ.P. 61; *see also* N.D.R.Ev. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected").

[¶ 28] On appeal Arrowhealth asserts only that the "rulings by the court were arbitrary and prejudicial," without identifying the portions of the depositions they sought to introduce and without explaining how the court's exclusion of this evidence prejudiced its defense. We conclude the district court did not abuse its discretion in excluding this deposition testimony.

## V

[¶ 29] Arrowhealth argues the district court erred in awarding Heng $207,147.70 for her attorney fees.

[¶ 30] Under N.D.C.C. § 34-01-20(3), a "court may award reasonable attorney's fees to the prevailing party as part of the costs of litigation." We review a district court's decision on attorney fees under an abuse-of-discretion standard. *See Vandall v. Trinity Hosps.*, 2004 ND 47, ¶ 32, 676 N.W.2d 88; *City of Medora v. Golberg*, 1997 ND 190, ¶ 18, 569 N.W.2d 257. The factors listed in N.D.R. Prof. Conduct 1.5(a) are intended to guide a district court in determining the reasonableness of an award of attorney fees:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particu-

lar employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

When determining the reasonableness of attorney fees, all factors must be considered, and no single factor controls. *T.F. James Co. v. Vakoch*, 2001 ND 112, ¶ 23, 628 N.W.2d 298.

[¶ 31] The record reflects that the district court considered all factors and the lodestar formula, *see Golberg*, 1997 ND 190, ¶¶ 19–21, 569 N.W.2d 257, in calculating the amount of attorney fees awarded to Heng. The court deducted those fees incurred solely for litigating the intentional infliction of emotional distress and breach of contract claims and deducted fees incurred by a "second chair" counsel during the trial. The court further considered that Arrowhealth's counsel billed the company in excess of $200,000 in defending the action. A comparison of hours and rates charged by opposing counsel is probative of the reasonableness of a request for attorney fees by prevailing counsel. *Golberg*, at ¶ 20. We conclude the district court did not abuse its discretion in awarding Heng $207,147.70 for her attorney fees.

## VI

[¶ 32] Arrowhealth argues the district court erred in taxing mediation fees and electronic legal research fees as allowable costs.

[¶ 33] Costs and disbursements are governed by N.D.C.C. §§ 28–26–06 and 28–26–10. *Courchene v. Delaney Distributors, Inc.*, 421 N.W.2d 811, 815 (N.D.1988). An award of costs under N.D.C.C. § 28–26–10 is discretionary, and a district court's decision on an award of disbursements under N.D.C.C. § 28–26–06 will be overturned on appeal only if an abuse of discretion is shown. *Riemers v. Anderson*, 2004 ND 109, ¶ 14, 680 N.W.2d 280; *Andrews v. O'Hearn*, 387 N.W.2d 716, 732 (N.D.1986).

### A

[¶ 34] Arrowhealth contends the district court erred in awarding Heng $1,281.50 in mediation fees as a part of her costs and disbursements.

[¶ 35] Although some courts have concluded that mediation fees are recoverable litigation costs under specific statutory provisions regarding costs, *see, e.g., Miller v. Forsyth Memorial Hosp., Inc.*, 618 S.E.2d 838, 843 (N.C.App.2005); *McConnell v. Mothers Work, Inc.*, 131 Wash.App. 525, 128 P.3d 128, 130 (App.2006), other courts have determined that mediation fees are not recoverable because they are not specifically authorized by statute, *see, e.g., Brisco–Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir.2002); *J.C. Bldg. Corp. II v. Parkhurst Homes, Inc.*, 217 Mich.App. 421, 552 N.W.2d 466, 470 (1996), and because the right to recover costs is not synonymous with the right to recover all expenses of litigation. *See Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis.2d 138, 549 N.W.2d 714, 717–18 (1996). *Compare* N.D.C.C. § 14–09.1–02 (court may order mediation in child custody, support, and visitation proceedings "at the parties' own expense"). We need not resolve the general issue here, because the

parties entered into a mediation agreement specifically providing that "[t]he fees and expenses will be borne equally by the parties." Because the parties contractually agreed to share mediation expenses, we conclude the district court abused its discretion in awarding Heng her mediation fees as allowable costs.

## B

 [¶ 36] Arrowhealth argues the district court erred in awarding Heng $5,143.23 in electronic legal research fees.

[¶ 37] Some courts have ruled that electronic research fees may be separately recovered as costs. *See, e.g., Crosby v. Bowater Inc. Retirement Plan*, 262 F.Supp.2d 804, 817 (W.D.Mich.2003). Most courts, however, have ruled that computer-aided research, like any other form of legal research, is a component of attorney fees and cannot be independently taxed as an item of costs. *See, e.g., Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 409 (7th Cir.2000); *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 172 (2nd Cir.1996); *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 38 F.3d 1429, 1440–41 (7th Cir. 1994); *Standley v. Chilhowee R–IV Sch. Distr.*, 5 F.3d 319, 325 (8th Cir.1993); *BD v. DeBuono*, 177 F.Supp.2d 201, 209 (S.D.N.Y.2001); *Bjornen v. State Farm Fire and Cas. Co.*, 81 Hawai'i 105, 912 P.2d 602, 604–06 (1996). In *Uren v. Dakota Dust–Tex, Inc.*, 2002 ND 81, ¶ 34, 643 N.W.2d 678, this Court held that attorney travel expenses for discovery are not recoverable as costs but "are part of the attorney's fees and expenses which are normally reimbursed by the client." *See also Braunberger v. Interstate Eng'r, Inc.*, 2000 ND 45, ¶ 20, 607 N.W.2d 904 (abuse of discretion to award attorney hotel and meal expenses as costs). Under the reasoning of *Uren, Braunberger*, and the majority of courts that have specifically addressed the question, we conclude that electronic legal research fees are a component of attorney fees and cannot be separately taxed as costs. We conclude the district court erred in awarding Heng electronic research fees as part of her costs.

## VII

[¶ 38] We have considered the other issues raised by Arrowhealth and conclude they are without merit. We reverse the judgment insofar as it awards Heng mediation and electronic legal research fees as costs. The judgment is otherwise affirmed.

[¶ 39] GERALD W. VANDE WALLE, C.J., DOUGLAS L. MATTSON, D.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.

[¶ 40] The Honorable DOUGLAS L. MATTSON, D.J., sitting in place of CROTHERS, J., disqualified.