2007 ND 20

**Paul K. HANSON, Plaintiff and Appellee**

v.

**Donald BOEDER, Defendant and Appellant.**

**No. 20060114.**

Supreme Court of North Dakota.

Feb. 6, 2007.

Roger J. Minch, Serkland Law Firm, Fargo, ND, for plaintiff and appellee.

Bruce H. Carlson, McNair, Larson & Carlson, Ltd., Fargo, ND, for defendant and appellant.

MARING, Justice.

[¶ 1] Donald Boeder appeals a judgment awarding Paul Hanson $315,194.26 in damages and costs for breach of a farm lease. We conclude the district court's award of damages is not clearly erroneous and we affirm.

I

[¶ 2] In 1998, Hanson signed a five-year lease to farm approximately 1,350 tillable acres of Boeder's farmland in Steele County for $50 per acre beginning with the 1999 crop year. The lease also allowed Hanson use of grain bins with a capacity of 93,000 bushels and two machine sheds located on the property. The lease addressed reimbursement for fall tillage and the requirement that Hanson farm the land in a good and farmerlike manner:

> [Hanson] has reimbursed previous renter ... for fall tillage on 1173.1 acres. [Boeder] agrees that [Hanson] also will be reimbursed for fall tillage if [Hanson] doesn't farm the land.
>
> [Hanson] agrees to farm the land in a good and farmerlike manner and also agrees to leave the land tilled in the same manner as when he received it.

Hanson was required to pay cash rent of $67,515 per year, with half due on April 1st, and the balance due on November 1st. In 2003, Boeder and Hanson renewed the lease for another five-year period ending in 2008.

[¶ 3] During the leases, Boeder and Hanson disagreed about Hanson's farming practices, but in 2004 and 2005 their disagreements escalated. On August 2, 2005, Boeder told Hanson he had enough of Hanson's farming practices, the lease was over, and he had leased the land to someone else. Boeder also told Hanson not to do the fall tillage because the new tenant wanted to do the work himself.

[¶ 4] Hanson sued Boeder, alleging Boeder intended to breach the contract by leasing the land to a third party. Hanson sought to enforce the contract, or alternatively requested all damages caused by Boeder's breach of the lease. Boeder counterclaimed alleging Hanson breached the lease by failing to farm the land in a "good and farmerlike manner." On September 26, 2005, Boeder moved for an injunction to stop Hanson from farming the land. On October 7, 2005, Hanson moved for a temporary restraining order to prohibit Boeder from terminating or interfering with the lease. On October 11, 2005, the court granted the temporary restraining order to maintain the status quo until a hearing could be held on the parties' motions. The court held a hearing and on November 4, 2005, entered an order denying Hanson's request for an injunction, concluding Hanson had an adequate remedy at law and equitable relief would not be available. During this time, Hanson continued to farm the land and completed the 2005 fall tillage before November 4, 2005 when the court held specific performance was not an available remedy.

[¶ 5] After a February 2006 bench trial, the district court found Boeder's statement to Hanson that the lease was over and he had found a new tenant constituted an anticipatory repudiation of the lease. The court dismissed Boeder's counterclaim, finding Boeder's repudiation was not justified because Hanson had farmed the land in a "good and farmerlike manner," and had not breached the lease. The court awarded Hanson $315,194.26 in damages and costs for lost profits, lost use of the grain bins and machine sheds, and the value of the fall tillage.

## II

[¶ 6] Boeder argues the district court misapplied the law by failing to apply the doctrine of avoidable consequences to reduce Hanson's damages. He claims Hanson did not mitigate his damages because Hanson had an opportunity to continue farming the Boeder land, which would have substantially reduced his damages, and chose not to.

[¶ 7] "A [district] court's determination of the amount of damages caused by a breach of contract is a finding of fact subject to the clearly erroneous standard of review." *Keller v. Bolding*, 2004 ND 80, ¶ 22, 678 N.W.2d 578. A finding is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 15.

[¶ 8] Section 32–03–09, N.D.C.C., addresses damages for breach of contract:

For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by the laws of this state, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin.

A person injured by the wrongful acts of another has a duty to mitigate or minimize the damages and must " 'protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.' " *Lochthowe v. C.F. Peterson Estate*, 2005 ND 40, ¶ 21, 692 N.W.2d 120 (quoting *Schneidt v. Absey Motors, Inc.*, 248 N.W.2d 792, 797 (N.D.1976)). The

duty to mitigate damages is sometimes referred to as the doctrine of avoidable consequences. *See Forster v. West Dakota Veterinary Clinic, Inc.*, 2004 ND 207, ¶¶ 37–38, 689 N.W.2d 366.

[¶ 9] The district court found that Hanson tried to mitigate his damages by looking for other farmland to rent, but was unsuccessful. The court also found that Hanson was farming 4,000 acres including the land he leased from Boeder, but had the manpower and equipment to farm up to 5,000 acres. The court concluded that even if Hanson was able to find other farmland to rent, it would not have been replacement land but land to expand his farming operation, and therefore it would not have reduced his damages.

[¶ 10] The evidence presented at trial supports the court's findings. Hanson testified that he was not aware of any farmland available for rent and he ran advertisements in the local newspapers looking for farmland to rent. He also testified that during the course of the lease, he was farming a total of 4,000 acres but he had the ability to farm 5,000 acres, and he was always looking for more land to rent to expand his farming operation.

[¶ 11] Boeder agrees that Hanson attempted to find other farmland to rent and admits he did not present any evidence to rebut Hanson's claim that he was unable to find any other land available to rent. However, Boeder argues Hanson did not mitigate his damages because he had the opportunity to continue farming Boeder's land for the remaining three years of the lease, after Boeder attempted to retract his repudiation during the trial. Boeder claims his land was an appropriate substitute to mitigate Hanson's damages because it was a good fit for Hanson's farming operation, it was available, and Hanson still had time to prepare for the 2006 crop year.

[¶ 12] We have said, "[a] retraction of an anticipatory repudiation after the injured party sues for enforcement or damages comes too late." *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 478 (N.D.1986). Adopting Boeder's argument would circumvent the law concerning retraction, because the repudiating party would be allowed to retract after a lawsuit has been commenced. Boeder's argument would encourage parties to repudiate a contract when they think they could get better terms in an effort to force the other party to renegotiate the contract.

[¶ 13] Boeder did not attempt to retract his anticipatory repudiation before Hanson commenced this action. Rather, Boeder continued to assert that the lease was terminated until trial, and he then changed his argument and asked the court to order specific performance or find that Hanson did not mitigate his damages because he did not continue leasing Boeder's land. The district court had already found specific performance was not an appropriate remedy because money damages were adequate to redress any injury Hanson had suffered. A court's decision whether to grant specific performance is discretionary. *Livinggood v. Balsdon*, 2006 ND 11, ¶ 6, 709 N.W.2d 723. We conclude the district court did not abuse its discretion in deciding specific performance was not available. We further conclude the district court did not misapply the law in finding Hanson attempted to mitigate his damages. The evidence supports the court's findings on lost profits, and we are not left with a definite and firm conviction the court made a mistake in awarding Hanson damages for lost profits.

III

[¶ 14] Boeder argues the district court erred in awarding Hanson damages

for the lost use of the grain bins and machine sheds because it resulted in a double recovery. He claims the damages for lost profits necessarily include the loss of use of the grain bins and machine sheds.

[¶ 15] This Court generally will not consider issues a party failed to raise in the district court:

One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the [district] court so it could intelligently rule on it. The purpose of an appeal is to review the actions of the [district] court, not to grant the appellant an opportunity to develop and expound upon new strategies or theories.

*Heng v. Rotech Medical Corp.*, 2006 ND 176, ¶ 9, 720 N.W.2d 54 (quoting *Chapman v. Chapman*, 2004 ND 22, ¶ 7, 673 N.W.2d 920).

[¶ 16] During trial, Hanson presented evidence of the damages he incurred due to Boeder's anticipatory repudiation, including expert testimony on the lost profits, and the loss of use of the grain bins and the machine sheds. Boeder failed to argue at trial that awarding Hanson damages for lost profits and for the loss of use of the grain bins and the machine sheds would be a double recovery, and therefore we will not consider this issue for the first time on appeal.

IV

[¶ 17] Boeder contends the district court clearly erred in awarding Hanson damages for the fall tillage. Boeder claims Hanson was not entitled to damages for the 2005 tillage because he told Hanson not to do the fall tillage, Hanson no longer had a duty to perform any of the terms of the contract if Boeder repudiated, and Hanson had a duty to mitigate or minimize his damages. Boeder also claims there was insufficient evidence of Hanson's expenses for performing the 2005 fall tillage, and therefore the court erred in awarding damages for tillage.

[¶ 18] Boeder failed to raise this issue in the district court, and during trial Boeder admitted he would have to pay Hanson for the 2005 fall tillage if the court found the lease was terminated. We generally do not consider issues not raised in the district court. *Heng*, 2006 ND 176, ¶ 9, 720 N.W.2d 54. Nevertheless, Boeder's argument also fails on the merits.

[¶ 19] The appropriate standard of review in an appeal challenging a district court's award of damages is whether the court's findings of fact are clearly erroneous. *Livinggood v. Balsdon*, 2006 ND 215, ¶ 14, 722 N.W.2d 716.

[¶ 20] The district court concluded the fall tillage was a future damage because Hanson would have been paid for the fall tillage at the end of the lease in 2008 if the lease was not terminated:

As stated earlier, Hanson did do the fall tillage in 2005. The farm lease specifically provides that Hanson will be reimbursed for fall tillage if he does not farm the land in 2006. Here, however, Hanson has received damages as if he would have continued farming this property through 2008. Boeder had no responsibility to pay for the fall tillage if Hanson had farmed the property. Rather, Hanson would have been entitled to the cost of the fall tillage in the fall of 2008, which would have been the last year of the farm lease, if it had not been breached earlier. This too, then, is a future damage.

The court awarded Hanson damages for the value of the tillage work based on average custom rates.

[¶ 21] The district court erred in awarding Hanson future damages

for the 2008 fall tillage. If the fall tillage is a future damage, it is a damage that could have been avoided and the doctrine of avoidable consequences should have been applied. However, we will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning. *State ex rel. North Dakota Hous. Fin. Agency v. Center Mut. Ins. Co.*, 2006 ND 175, ¶ 12, 720 N.W.2d 425.

[¶ 22] Under the terms of the contract Hanson was required to leave the land tilled in the same manner as he received it, and Boeder was required to reimburse Hanson for that tillage. A breaching party's repudiation discharges the injured party's duty to perform, and the injured party generally will not be awarded damages for any part of his loss that he could have avoided by discontinuing performance. *See* 9 Arthur Linton Corbin, *Corbin on Contracts* § 983 (interim ed. 1979). However, in the present case when Hanson initially sued Boeder, Hanson sought as relief specific performance and only requested damages as an alternative remedy.

[¶ 23] The record indicates that on September 26, 2005, Boeder requested a preliminary injunction to stop Hanson from farming the land, and specifically from completing the fall tillage. On October 7, 2005, Hanson requested a temporary restraining order to maintain the lease. The court granted Hanson's request for a temporary restraining order, and said, "the Application should be granted on an ex parte basis to maintain the status quo and to prevent irreparable harm until a hearing can be held and the Court can determine whether a temporary injunction should be issued." The court held a hearing on November 2, 2005, and informed the parties that specific performance would not be an available remedy because money damages would adequately redress Hanson's damages, if the court found for Hanson. The court entered an order denying Hanson's request for an injunction on November 4, 2005. Hanson presented evidence that the fall tillage was completed in October 2005, while the district court's temporary restraining order was in effect and before a hearing was held on the parties' requests for injunctions. When the court found specific performance would not be an appropriate remedy, Hanson had already completed the fall tillage. Hanson performed the fall tillage while he was still pursuing specific performance, and under these circumstances we conclude he is entitled to damages for the fall tillage.

[¶ 24] Boeder also claims there is insufficient evidence to establish Hanson's actual damages for the fall tillage because Hanson did not present evidence of the actual expenses he incurred in completing the 2005 fall tillage. Although Hanson did not present evidence of the expenses he incurred in performing the fall tillage, he presented expert testimony about the average custom rates for tillage work. The evidence supports the court's findings, and we conclude the district court's finding about the amount of damages for the fall tillage was not clearly erroneous.

V

[¶ 25] Hanson argues Boeder's appeal is frivolous, and he should be awarded interest, double costs, and reasonable attorney's fees.

[¶ 26] Rule 38, N.D.R.App.P., provides, "[i]f the court determines that an appeal is frivolous, or that any party has been dilatory in prosecuting the appeal, it may award just damages and single or double costs, including reasonable attorney's fees." "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or

demonstrates persistence in the course of litigation which evidences bad faith." *Healy v. Healy*, 397 N.W.2d 71, 76 (N.D. 1986).

[¶ 27]   We conclude Boeder's appeal is not frivolous or taken in bad faith, and therefore we deny Hanson's claim for double costs and attorney's fees.

## VI

[¶ 28]   We affirm the judgment.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, and ZANE ANDERSON, District Judge, JJ., concur.

[¶ 30] The Honorable ZANE ANDERSON, District Judge, sitting in place of SANDSTROM, J., disqualified.